[Civ. No. 7139. Third Dist. May 21, 1945.]

NEVADA IRRIGATION DISTRICT, Plaintiff, v. HARRY LEON JONES et al., Defendants; MRS. ANN BAS-TEAR, Respondent; GENEVIEVE JONES, a Minor etc., Appellant.

A. J. Just for Appellant.

James Snell and Chas. F. Metteer for Respondent.

THOMPSON, J.—The cross-defendant, Genevieve Jones, has appealed from a judgment rendered against her on the cross-complaint filed in this suit in eminent domain, determining that she has no interest in the land condemned for public use.

September 4, 1941, plaintiff, a duly organized irrigation district in Nevada County, brought suit to condemn 1.25 acres of land in that county for public use. Harry Leon Jones, Genevieve Jones, his adopted minor daughter, Harry Leon Jones, as trustee of his said daughter, and Ann Bastear were made defendants. Mr. Jones, in his individual capacity, filed a disclaimer. As guardian ad litem of his daughter he filed an answer claiming that the land belonged to her and that he held the title as trustee only. Ann Bastear filed an answer and cross-complaint against Harry and Genevieve Jones, alleging that he was the owner in fee of the land and that Genevieve had no right, title or interest therein; that on July 10, 1934, Harry Leon Jones was indebted to cross-complainant in the sum of $1,000 and accumulated interest; that on February 21, 1938, she recovered and recorded a judgment against him in Nevada County upon said indebtedness for the aggregate sum of $1,450, no part of which has been paid. She further alleged, in effect, that in anticipation of said judgment and to defraud her and other creditors, Mr. Jones, on and after July 1, 1934, fraudulently transferred "all of his property," including the land involved herein, to his said minor daughter. Mrs. Bastear thereupon asked for judgment declaring that Harry Leon Jones was the owner in fee of said land subject to her lien thereon to satisfy her said judgment against him.

The appellant moved to strike the amended answer and cross-complaint from the record, which was denied. April 21, 1942, the appellant filed a demurrer to the amended answer and cross-complaint on the ground that the cross-complaint failed to state facts sufficient to constitute a cause of action and because the action for alleged fraudulent conveyance of property was barred by section 338, subdivision 4, of the Code of Civil Procedure. April 28th, seven days after filing the demurrer, and before it had been determined, appellant

filed her answer to the cross-complaint, also setting up the statute of limitations. A motion to strike out the demurrer as *functus officio* was denied. The court subsequently made an order pursuant to section 472a of the Code of Civil Procedure, in effect that since the answer was not filed ''at the same time'' as the demurrer the last mentioned pleading ''is deemed withdrawn for decision.''

Pursuant to written stipulations signed by the attorneys representing all parties to this action, a judgment was rendered in favor of plaintiff condemning the property as prayed for, and the sum of $500, which was the agreed consideration therefor, was paid to the clerk subject to order of the court after determining the party to whom it belonged.

The cross-defendant, Genevieve Jones, moved for judgment on the pleadings, which was denied. The cause was thereupon tried on the issues presented by the cross-complaint and answer thereto. The chief issues were the questions as to whether Harry Leon Jones was the owner of the property sought to be condemned or whether he merely held title thereto as trustee for the benefit of his daughter Genevieve, and, if the property belonged to him, whether the judgment creditor, Ann Bastear, was entitled to the proceeds of the condemnation price therefor in partial satisfaction of her judgment lien.

The court adopted findings favorable to the cross-complainant in every essential respect. It found that Harry Leon Jones acquired and held title to the land in his individual capacity and not as trustee for his daguhter Genevieve, and that she had no right, title or interest in the land; that the cross-complainant held a valid unsatisfied judgment lien against the land and was entitled to the proceeds of the condemnation price therefor in partial satisfaction of her lien, and that the statute of limitations did not bar her action. Judgment was accordingly rendered against the appellant determining that Ann Bastear was entitled to the money paid by stipulation into court in compensation for the condemned land, to be applied in partial satisfaction of her lien to secure her judgment debt against Harry Leon Jones. From that judgment this appeal was perfected.

 There is no merit in the appellant's contention that the cross-complaint fails to state facts sufficient to constitute a cause of action. Certainly it states a cause based on a valid

unpaid judgment lien on the particular parcel of land which was sought to be condemned for public use, and the application to apply the proceeds of the amount thereof to a partial satisfaction of that judgment lien. ▉ The appellant filed a general demurrer to the cross-complaint in which she also pleaded the statute of limitations. But seven days later, before that demurrer had been determined, she filed an answer to the cross-complaint. The court properly held that the demurrer was thereby waived. (Code Civ. Proc., § 472a; *Moran* v. *Abbey*, 58 Cal. 163; *Minehan* v. *Silveria*, 131 Cal.App. 317 [21 P.2d 617]; 1 Bancroft's Code Pleading, 10-Yr. Supp. § 721, p. 405.) In the authority last cited it is said:

". . . a defendant who answers prior to the decision on his demurrer thereby waives all grounds of demurrer except those that are urgeable at any stage of a case."

▉ The appellant, however, again pleaded the statute of limitations in her answer, which she was privileged to do. (16 Cal.Jur. 604, § 200.) ▉ We are of the opinion the action alleged in the cross-complaint for satisfaction of the judgment lien was not barred by the provisions of section 338, subdivision 4, of the Code of Civil Procedure.

▉ The respondent contends that it is apparent from the language of the deed to the property in question that the title was conveyed to Harry Leon Jones individually and not as a "trustee." It is argued that the habendum clause of the deed confirms that conclusion. We are of the opinion the mere construction of the language of the deed does not necessarily lead to that conclusion. We are unable to find that the deed was introduced in evidence. It is true that paragraph VI of the "Second Defense" in Ann Bastear's First Amended Answer and Cross-complaint alleges that Fred A. Mellor executed and delivered the deed on April 23, 1937, in which "Harry Leon Jones, *Trustee for Genevieve Jones, is named as grantee*," and that the instrument was recorded on the 26th day of May, 1937. The appellant's answer admitted that the deed contained that language and that it was duly recorded on the date last mentioned. Construing the deed as a whole, even though we consider the language of the habendum clause in spite of the fact that the deed was apparently not offered in evidence, we may not hold, as a mere matter of law, that it clearly indicates the parties thereto intended that the title should be conveyed to Mr. Jones individually since the granting clause specifically mentions Gene-

vieve Jones as the beneficiary of the alleged trust. It is true that when real property is conveyed to a person "designated 'trustee' or 'as trustee' . . . it shall be presumed that the grantee . . . holds . . . the title to the estate . . . absolutely in his . . . own individual right and free from any trust." (Civ. Code, § 869a.) But that presumption is limited to an instrument in which the designation of the beneficiary of the trust is not named or indicated. That section specifically states that the presumption of a conveyance of absolute title to the named grantee, free from the trust, applies only when *"no beneficiary* be indicated or named in said conveyance." (Italics ours.) In the present case the deed specifically mentions Genevieve Jones as the beneficiary of the alleged trust. That section of the code therefore has no application to the deed which is involved in this case. ■ Since the beneficiary is named in this deed, the habendum clause, which provides that the title is to be held by "said party of the second part, and to his heirs and assigns forever," may be reasonably reconciled to mean that title is to be held by Genevieve Jones as designated beneficiary of the alleged trust. If the granting clause of the deed is irreconcilable with the language of the habendum clause, the former prevails. (*In re Shoemake*, 211 Cal. 457 [295 P. 830] ; 26 C.J.S. § 99b, p. 350.)

■ In construing the language of a deed to determine who is intended as the grantee, the instrument should be considered as a whole, reconciling, if possible, all the provisions of the deed with relation thereto. (*Boyer* v. *Murphy*, 202 Cal. 23 [259 P. 38] ; 9 Cal.Jur. § 125, p. 251, and § 128, p. 255.) In 26 Corpus Juris Secundum, at page 356, section 99f, it is said in that regard:

"In determining whether a grantee takes individually or in a trust or representative capacity where words referring to him as a trustee or representative appear in the deed, it has been held or recognized that the court will apply applicable rules of construction to ascertain the purpose or intention, considering the instrument as a whole, reconciling repugnant parts if possible, and keeping in view the relative force and effect of the various clauses."

■ The mere construction of the language of the deed is, however, not controlling in determining who actually owned the land. In the present case a direct issue of fact was tendered by the pleadings as to whether Harry Leon Jones, the judgment debtor, was the owner of the land condemned. When

such an issue of fact is presented, as distinguished from the mere legal construction of a deed, which is dependent upon the evidence adduced extrinsic of the deed, it becomes a question for the determination of the trial judge or the jury. (*Passantino* v. *American Trust Co.*, 23 Cal.App.2d 202 [72 P.2d 223]; 28 C.J.S. 356, § 99 g.) In the text last cited it is said in that regard:

"Although the court should decide who holds title where it rests on the legal effect of the deed, yet, where there is an issue as to the identity of the grantee, the question is one of fact for the jury under proper instructions by the court."

█ The chief issue raised by the cross-complaint in this case was whether Harry Leon Jones owned the land in question in his individual capacity, or merely as trustee for his daughter Genevieve Jones. That issue was decided against the appellant. It was definitely determined that Mr. Jones owned the property in his individual capacity and that it is subject to the judgment lien of the respondent Ann Bastear. There is ample evidence to support the findings in that regard. The record shows without conflict that Ann Bastear recovered and recorded a judgment for the sum of $1,450 against Harry Leon Jones, in Nevada County, wherein the land is located, on February 21, 1938. That judgment created a lien on the real property in that county which continued in force for five years from the date of the entry of the judgment. (Code Civ. Proc., § 674.) The land in question was conveyed to Harry Leon Jones by deed dated April 23, 1937. The cross-complaint was filed in this case March 26, 1942. The judgment lien was unpaid and in force at the time of the commencement of this action. The statute of limitations had not expired.

In support of his claim that the land in question belonged to his daughter Genevieve, Harry Leon Jones testified that she was adopted by him in 1924; that when they moved to Nevada County he deposited to her account in the Bank of America the sum of $1,244.35, which belonged to her; that on December 26, 1935, he purchased with her funds a Chevrolet truck which cost $1,090.98; that he traded the truck for the lot in question and received the deed therefor, in his name as trustee for Genevieve Jones on April 23, 1937, and that the land belonged to her. He was the only witness called in behalf of the appellant. His evidence in that regard is not convincing. The court was justified in questioning its cred-

ibility. The witness contradicted himself on material facts. An examination of the bank statements which were received in evidence, together with the fact that the witness failed to comply with the court's order to produce his account books and later bank statements covering the time of the actual transactions in question, raises a serious doubt regarding his contention that the property was held by him in trust for his daughter. The bank statements which were received in evidence show that Genevieve Jones had only $1,244.35 in cash on September 20, 1932. She owned no other property. That account was exhausted by withdrawing the balance of $33.49 on November 9, 1935, about a month before the Chevrolet truck which was traded for the land in question was purchased. The bank statements contain no item corresponding to the amount paid for the truck. No evidence was adduced satisfactorily indicating that the purchase price of the truck was paid from her funds. The witness first said he kept complete book accounts and that he had later bank statements. When he was directed to produce them he testified that they had been destroyed by rats in a garage where he kept them. He conducted an active business of his own, and he first said that he kept a separate personal bank account. When he was later directed to produce statements of his personal bank account, he finally testified that "I didn't have any." The alleged bank account of Genevieve Jones was apparently too active an account for a mere fund which was to be used only for the necessary personal maintenance of a minor child. An average of ten or fifteen checks per month were drawn upon that small fund. Some of those checks were for sums amounting to several hundred dollars. Numerous deposits were made in that fund. Several of them exceeded the sum of $1,000. June 6, 1934, $1,139.93 was deposited. July 24th of the same year $1,500 was deposited. October 14, 1935, $1,800 was deposited. In less than a month from the last date the entire fund was exhausted. No bank statement covers the period of time since the last mentioned date. It is not reasonable to believe such transactions involved only the small vanishing fund of Genevieve Jones. The record justified the court in finding that Mr. Jones took a deed to the property in question and maintained his own bank account "as trustee" to place his property beyond the reach of creditors. In the caption to an annotation on the subject of the effect of holding property in the name of "trustee," it is said in 137 American Law Reports at page 461:

"The reasons for doing so are many. It is likely that many such transfers are made merely for the sake of convenience, although it seems more likely that the usual reason is to put property beyond the reach of creditors while at the same time permitting the real owner to exercise some measure of control over it."

It was the sole province of the trial court to determine the good faith of the trustee in said transactions.

Upon this record we may not hold, as a matter of law, that the court erred in determining that Harry Leon Jones was the real owner of the land in question, and that it was subject to the judgment lien which was in full force at the time of the commencement of this action.

The cross-complaint did not ask to set aside the deed of conveyance. If the deed were set aside the record title would not remain in Harry Leon Jones. The pleading therefore merely asked the court to determine that the land belonged to Mr. Jones, and that it was subject to the judgment lien, which the court did. The land in Nevada County was conveyed to him as trustee on April 23, 1937. That deed was recorded the following month. Ann Bastear's judgment against Mr. Jones was recovered and recorded in that county February 21, 1938. If that land really belonged to Harry Leon Jones individually, the recording of the judgment created a judgment lien on the property on the last mentioned date, which lien would remain valid for five years thereafter. (Code Civ. Proc., § 674.) The land was never conveyed by Jones to any other person to fraudulently defeat creditors, or otherwise. It remained in his name, as trustee, at the time of the trial. The court merely determined that the property belonged to Jones subject to the judgment lien and awarded the consideration paid on condemnation thereof to the cross-complainant in partial satisfaction of her lien. We think the gist of this action on the cross-complaint was the question of whether a valid judgment lien existed against the land in favor of the judgment creditor.

The appellant assumes that the cause presented by the cross-complaint was founded on an alleged fraudulent conveyance of real property to defeat creditors, and that since the action was not commenced until more than three years had elapsed after the recording of the deed, the action was barred by the provisions of section 338, subdivision 4, of the Code of Civil Procedure. That section provides that "An

action for relief on the ground of fraud or mistake," shall be commenced within three years. But it further provides that:

"The cause of action in such case not to be deemed to have accrued *until the discovery,* by the aggrieved party, of the facts constituting the fraud or mistake." (Italics added.)

Assuming, without so deciding, that the foregoing section applies to the circumstances of this case, we may not assume the mere recording of a deed to real property in which a judgment debtor is designated grantee "as trustee" for a named beneficiary, becomes constructive notice that he is holding the property in that manner to defraud creditors. If Jones had conveyed land, standing in his name as the owner thereof, to another person, the recording of the deed might, under proper circumstances, constitute constructive notice to a judgment creditor of a transfer to defraud creditors. No authority is cited, and we have been unable to find any such which holds that the mere reception and recording of a deed in the name of a judgment debtor "as a trustee" imputes constructive notice to the judgment debtor of a conveyance to defraud creditors. There is no evidence in this case which would have placed the judgment creditor on inquiry to determine whether Jones was holding the property as trustee to defraud creditors. We are persuaded that the action to apply the proceeds of the funds secured as compensation for the land in the condemnation proceeding, in partial satisfaction of the judgment lien, was not barred by the statute of limitations.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.