34 Cal.Rptr. 178]

[Civ. No. 27248.   Second Dist., Div. Two.   Oct. 8, 1963.]

MARTIN T. BYRNE, Plaintiff and Respondent, v. RUFUS L. BAKER, Defendant and Appellant.

Ross & Harris and Howard C. Parke for Defendant and Appellant.

James W. Harvey, Clark A. Barrett and Edward J. Bloom for Plaintiff and Respondent.

HERNDON, J.—Appellant Rufus Baker appeals from the judgment entered against him in an action in unlawful detainer. On August 21, 1961, plaintiff and respondent Martin T. Byrne filed his complaint in unlawful detainer against appellant Baker and two codefendants, Harold T. Corbett and his wife, Carol Corbett. According to the allegations of his complaint, respondent became the owner of certain real property, and the hotel building located thereon, as the result of the following circumstances:

On June 22, 1960, respondent recovered a judgment in the amount of $139,212.84 against Harold T. Corbett and others in the United States District Court. Thereafter, on July 5, 1960, a writ of execution was issued by said court and levied upon the real property in issue. In 1960, and for several years prior thereto, defendant Harold T. Corbett "was the sole record owner of the aforesaid real property." The property was duly advertised for sale and on September 6, 1960, was sold to respondent for $25,000 (by way of credit upon the judgment above referred to). The property was not redeemed during the period allowed therefor, and, on September 12, 1961, respondent received and recorded a marshal's deed wherein the grantor "granted, bargained and sold, . . . unto [respondent] all the right, title, interest and claim which the said Harold T. Corbett, Defendant, on the day of sale aforesaid, had in and to the following-described tract or parcel of land, [description] . . . To HAVE AND TO HOLD, the said tract or parcel of land, together with the appurtenances thereunto belonging, unto the said [respondent] and his heirs and assigns forever."

The complaint further alleged that on August 16 and 17, 1962, respondent served on the defendants a three-day notice to quit and deliver up possession of the property, but that defendants failed so to do and continued in possession thereof. Respondent's prayer sought, *inter alia*, restitution of the property and damages of $150 per day for each day that defendants continued in possession without respondent's permission.

■ Appellant filed general and special demurrers upon the grounds that the complaint did not state facts sufficient to constitute a cause of action and that it could not be ascertained therefrom "what interest, if any, Harold T. Corbett, is alleged to have had in the said real property on July 5, 1960."

These demurrers were overruled on September 13, 1962, and this ruling is assigned by appellant as his initial claim of error. Although the complaint is no example of precise pleading, the allegation that "in 1960 and for several years previous, defendant Harold T. Corbett was the sole record owner of the aforesaid real property," is a sufficient allegation, at least as against a general demurrer, that Corbett was the owner of a sufficient legal interest in the land to entitle him to possession on July 5, 1960.

■ Apparently in connection with the ruling on the demurrer, the parties entered into a stipulation pursuant to which respondent amended his complaint to allege that appellant was "a person who asserts some claim to the real property, the subject matter of this action, derived from defendant Harold T. Corbett by virtue of two deeds, copies of which are attached hereto. . . ."

The first of these deeds was a grant deed from Harold T. Corbett and his wife to appellant, reciting that, for a valuable consideration, the property in issue had been granted to appellant. It was dated May 24, 1960, and recorded May 27, 1960. However, in the body of the document, following the legal description, there appeared the words: "This deed is for Security Only."

The second of the two deeds was signed and acknowledged by Harold J. Corbett before a notary on May 28, 1960. It recited that for a "Valuable Consideration" he quitclaimed the real property to appellant. This deed, however, was not recorded until October 4, 1961.

Since the record indicates that appellant made no further objection to the form of the pleading, we may assume that this amendment satisfied the objections raised by his special demurrer. On September 18, 1962, appellant filed his answer wherein, in addition to general and specific denials of the matters alleged in respondent's complaint (for lack of information and belief), he alleged that he owned said real property by reason of the execution of the deeds above described.

When the matter came on for trial on September 25, 1962, appellant conceded that all procedural requirements of the

execution sale upon which respondent's claim to possession rested had been complied with. He asserted, however, that in view of the deeds wherein he was named as the grantee and which were disclosed by respondent's complaint, respondent had not demonstrated that he had "duly perfected" his title sufficiently to authorize him to maintain the action under the terms of section 1161a, subdivision 1, of the Code of Civil Procedure. He did not question the sufficiency or propriety of the three-day notice or its due service upon him. He admitted by his answer that he was continuing in possession in defiance thereof.

Section 1161a, subdivision 1, of the Code of Civil Procedure provides that an unlawful detainer action may be brought against one holding over and continuing in possession of real property "[w]here the property has been duly sold by virtue of an execution against him, or a person under whom he claims, and the title under the sale has been duly perfected." It is, of course, settled law that broad questions of title may not be litigated in an unlawful detainer action. As stated in *Cheney* v. *Trauzettel*, 9 Cal.2d 158, 159-160 [69 P.2d 832]:

"The trial court properly held that in the summary proceeding in unlawful detainer the right to possession alone was involved, and the broad question of title could not be raised and litigated by cross-complaint or affirmative defense. [Citations.] It is true that where the purchaser at a trustee's sale proceeds under section 1161a of the Code of Civil Procedure he must prove his acquisition of title by purchase at the sale; but it is only to this limited extent, as provided by the statute, that the title may be litigated in such a proceeding. [Citations.]

"... Irrespective of the merits of the defenses raised by the answer, the alleged equitable grounds of attack on plaintiff's title have no place in the present summary proceeding, for if such issues are permissible, the proceeding entirely loses its summary character. In our opinion the plaintiff need only prove a sale in compliance with the statute and deed of trust, followed by purchase at such sale, and the defendant may raise objections only on that phase of the issue of title. Matters affecting the validity of the trust deed or primary obligation itself, or other basic defects in the plaintiff's title are neither properly raised in this summary proceeding for possession, nor are they concluded by the judgment." (See also *Kartheiser* v. *Superior Court*, 174 Cal.App.2d 617 [345

P.2d 135]; *Cruce* v. *Stein,* 146 Cal.App.2d 688 [304 P.2d 118]; *Abrahamer* v. *Parks,* 141 Cal.App.2d 85 [296 P.2d 343]; *Freeze* v. *Salot,* 122 Cal.App.2d 561 [266 P.2d 140]; *Higgins* v. *Coyne,* 75 Cal.App.2d 69 [170 P.2d 25]; and *Delpy* v. *Ono,* 22 Cal.App.2d 301 [70 P.2d 960].)

Appellant, who did not attend the trial in person and who, in effect, submitted the matter on the pleadings, does not actually challenge the above stated rules of law. ▉ He asserts that the two deeds, wherein he was named as grantee and which were incorporated in respondent's complaint, established his superior claim to title and right to possession as a matter of law. We find no merit in this contention.

The first deed, dated May 24, 1960, and recorded May 27, 1960, prior to the execution proceedings, specifically provides on its face that "This deed is for Security Only." Section 2924 of the Civil Code provides in part: "Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage. . . ."

"[A] mortgagee is not entitled to possession of the property, either before or after default. He has no right of entry, except when he is vested with title to the property on foreclosure and sale." (33 Cal.Jur.2d, Mortgages, etc., § 194, p. 587.)

Neither by his pleadings nor by means of any offer of proof did appellant attempt to show that there had been any foreclosure of any security interest asserted by him which would have entitled him to possession. Therefore, the existence of this instrument clearly would not impair respondent's right to maintain this action. ▉ Any equitable rights which appellant may assert thereunder can be determined in the quiet title action which long has been pending between the parties. Such rights, if any, will not be concluded by the judgment herein. (*Cheney* v. *Trauzettel, supra,* 9 Cal.2d 158, 160.)

▉ It is clear also that any interest in the property that appellant may have acquired by the second deed would not operate as a bar to respondent's right to maintain this action, for it was not recorded until after respondent's title under the execution sale had been perfected and the marshal's deed to the property recorded. Section 1214 of the Civil Code provides:

"Every conveyance of real property, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any

part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, ..."

Section 1107 of the Civil Code also provides:

"Every grant of an estate in real property is conclusive against the grantor, also against everyone subsequently claiming under him, except a purchaser or encumbrancer who in good faith and for a valuable consideration acquires a title or lien by an instrument that is first duly recorded."

In the early case of *Foorman* v. *Wallace*, 75 Cal. 552 [17 P. 680], it was determined that a judgment creditor who purchased at his own execution sale, and who first recorded the sheriff's certificate of sale, was protected by these provisions and that his rights were therefore superior to those of the holder of an unrecorded deed. Neither by his pleadings nor by any offer of proof did appellant suggest the existence of any matters that would have defeated the operation and effect of this established rule.

It is, of course, to be remembered that we are not here faced with a situation in which it is contended that a levy of execution was mistakenly made upon property in which the judgment debtor had no interest. For the purposes of this proceeding, it was conceded that Corbett had full legal title and right to possession of the property except insofar as this right and title may have been diminished by the deeds executed in favor of appellant. As indicated, there is nothing in the existence of these deeds to show that appellant had not perfected his title sufficiently to permit him to bring and successfully maintain this possessory action.

Any claims of title that appellant may have may be determined in the quiet title action now pending. ▮ Further, if appellant had been possessed of any valid equitable rights under these deeds, which would have made it inequitable for respondent to proceed with this unlawful detainer action, he could have sought, and doubtless could have obtained, an injunction to prevent such action in the quiet title suit that has been pending since September 8, 1960. As stated in *Dennis* v. *Overholtzer*, 149 Cal.App.2d 101, 105 [307 P.2d 1012] (hearing denied), in which such an injunction was granted, "... there is nothing sacrosanct about the summary proceeding in unlawful detainer which removes it from the control of equity in a proper case."

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied November 1, 1963.