[Civ. No. 22348. First Dist., Div. One. Aug. 16, 1965.]

MABEL L. HANSEN, Plaintiff and Respondent, v. G & G TRUCKING COMPANY, Defendant and Appellant.

484

Albert A. Albeck, Charles E. Ogle and Ray A. Gallo for Defendant and Appellant.

Donald R. Haile and Lucas, Wyckoff, Miller, Stanley & Scott for Plaintiff and Respondent.

MOLINARI, J.—Defendant and cross-complainant, G & G Trucking Company (hereinafter referred to as appellant), appeals from a decree, after trial by the court, quieting title to certain real property in favor of plaintiff and cross-defendant, Mabel Hansen (hereinafter referred to as re-

spondent), against appellant and defendants, Helen Long and Clair Long (hereinafter referred to as the Longs).[1]

## The Record

The real property which is the subject of this action is located in Santa Cruz County and consists of lot 6, the west 20 feet of lot 7, and the east 30 feet of lot 5, block E, of Mar Vista Tract. Various deeds of record showing the relevant chain of ownership of this property were introduced into evidence as follows: (1) A deed dated March 12, 1947, in which a Mr. and Mrs. Sherman granted lot 6 and the west 20 feet of lot 7 to "Merle Hansen, trustee"; (2) a deed dated September 8, 1947, in which the Santa Cruz County Title Company granted to "M. Hansen" the east 30 feet of lot 5; and (3) a deed dated December 2, 1947, in which "M. Hansen and Mabel Hester Hansen, his wife" granted to "Merle Hansen, trustee" the very same real property as was the subject of the second deed, namely, the east 30 feet of lot 5. At all times subsequent to December 2, 1947, record title to these parcels has remained in the name of "Merle Hansen, trustee."

Appellant's claim to this property is based on the following facts: On September 1, 1960, appellant recovered a money judgment in Los Angeles County against Merle Hansen and others; on November 13, 1961, an abstract of this judgment was recorded in Santa Cruz County; on January 3, 1962, pursuant to a writ of execution issued on this judgment, the Sheriff of Santa Cruz County sold to appellant the property which is the subject of this action and delivered to

---

[1]The procedural context of this action was as follows: Respondent's amended complaint contained four causes of action—two against appellant and two against the Longs. As against both appellant and the Longs, respondent set forth separate causes of action to recover damages for slander of title and to quiet title to the subject property. Appellant filed both an answer and an amended cross-complaint to quiet title to the same property, naming as cross-defendants respondent, Merle Hansen, Helen Long, and Clair Long (both in his individual capacity and as trustee of the estate of Glen Long and Helen Long). Subsequently, respondent and Merle Hansen filed an answer to appellant's cross-complaint, and the Longs filed separate answers to respondent's complaint and appellant's cross-complaint. Prior to trial the two slander of title causes of action of respondent's complaint were dismissed, the case thus proceeding to trial on the basis of the cross-actions to quiet title. The court's decree quieted title in respondent as against appellant and the Longs. The Longs have not appealed from this decree. However, appellant does raise an issue on this appeal which concerns the Longs, namely, the question of priority as between the respective claims of appellant and the Longs to the subject property.

appellant a sheriff's certificate of sale which was recorded on January 19, 1962. Upon the expiration of the redemption period, the sheriff, on March 4, 1964, executed and delivered to appellant a sheriff's deed to the subject property.[2]

The basis of respondent's claim to the subject property is founded on her assertion that she paid the entire purchase price for this property, plus the cost of erecting improvements upon it, and the taxes and maintenance costs attributable to it; that by oral agreement between herself and Merle Hansen, her present husband (hereinafter referred to as Merle), the latter holds the property as trustee for her benefit; and that accordingly she is the sole owner of the property in spite of its title of record, and Merle has at no time possessed any interest in this property which is subject to execution in satisfaction of any judgments against him. In addition, respondent claims that appellant's interest in the Santa Cruz property is subject to the interest which respondent obtained by an unrecorded gift deed to her from Merle executed on March 24, 1947.

The facts upon which respondent bases these claims are contained in her testimony at the trial as follows: Prior to entry of her final decree of divorce on December 2, 1948, respondent was married to John Hester for 17 years. On December 7, 1948, respondent married Merle, whom she had previously known for 2 or 3 years. In 1947, while respondent was married to Hester, she purchased the property which is the subject of this action. Since she was having marital difficulties at this time, upon the advice of her then attorney, respondent took title to the subject property in the manner above indicated. However, respondent testified that she and Merle had an understanding to the effect that he held no interest in or claim to the subject property. Moreover, on March 24, 1947, Merle executed a gift deed of the property back to respondent.[3] This instrument, which had been prepared by respondent's then attorney was at no time recorded but was held by this attorney until shortly before the commencement of this action.

Concerning the source of the consideration used to purchase the two parcels of realty, respondent testified that she paid approximately $1,750 for the first purchase and about

[2]The record does not disclose whether this deed was recorded.

[3]It should be here noted that this gift deed relates solely to the property purchased on March 12, 1947, that is, lot 6 and the west 20 feet of lot 7.

$450 for the half lot; that both purchases were paid for from her own funds; and that she obtained the funds to purchase this property ''From restaurant money. I had a restaurant at the time.'' After purchasing this property, plaintiff had a dwelling house built on it in 1947-1948. Respondent testified that the cost of construction was between $10,000 and $12,000 and that she paid the builder weekly with cash from the money which she took in from her restaurant.[4] On cross-examination respondent testified that she did not have any records concerning her operation of the restaurants which she had owned. In addition, it developed that respondent did not own any restaurants in 1947 or 1948; that she had sold her last restaurant in 1945 or 1946; and that at the time the residence was being built on the Santa Cruz property respondent was employed as the manager of a restaurant, receiving a salary of $400 a month plus meals and a bonus at the end of the year. When questioned further as to the source of the money used to build the residence, respondent indicated that the cash came from her accumulated savings and from her salary.

The record also contains the following evidence concerning the dealings of respondent and Merle with respect to the subject property: (1) Respondent testified that she paid all the taxes and maintenance costs on this property from her own funds, and that she and Merle at all times kept their properties separate and did not maintain a joint bank account; (2) on May 12, 1948, respondent and Merle jointly executed a deed of trust upon the Santa Cruz property to secure a $4,000 loan which was used by Merle to start an escrow company in Whittier, California. The trust deed read that it was executed by ''Merle Hansen, Trustee and Merle Hansen and Mabel H. Hansen, his wife . . . Trustor''; (3) a financial statement, dated June 30, 1959, which Merle used in his dealings with appellant, listed the subject property as an asset having the value of $18,500. Respondent, however, testified that she had no knowledge that her husband utilized the property for his own use or benefit, including the listing of it as an asset on a financial statement; and that if he had

---

[4]In this regard plaintiff testified as follows: ''. . . I brought cash over and paid each Saturday night for the work that had been done the previous week.'' ''. . . I paid every week . . . maybe five or six hundred dollars or something like that.'' ''Well, I made quite a sum of money in those days, . . . and at the end of the week I would take what I didn't bank out and brought over and paid my bills with it.''

so listed this property, he did so without her knowledge and consent; (4) on April 1, 1960, respondent, together with Merle, executed a promissory note securing a bail bond for Merle, which note was secured by a trust deed encumbering the subject property. As to this transaction respondent testified that she remembered signing several papers in connection with the bail bond, but did not know exactly what they all contained; and that she never authorized Merle to utilize the subject property as security to obtain a bail bond.

In addition to the foregoing evidence, the record also discloses that before her divorce from Hester, respondent and Hester executed a property settlement agreement; that the subject property was not mentioned or provided for in said agreement; and that since 1951, respondent's elderly mother has resided on the subject property.

### The Applicability of Civil Code Section 869a

It is appellant's first contention that by virtue of Civil Code section 869a,[5] and the conclusive presumption established therein, its rights to the subject property are not affected by respondent's alleged claim of ownership. The pertinent portions of this code section provide as follows: "Whenever any estate or interest in, or lien on or encumbrance on real property is conveyed, created, aliened, mortgaged, encumbered or affected by an instrument in writing to or in favor of a person or persons in trust, or (a) where such person is designated 'trustee' or 'as trustee,' or (b) where such persons are designated 'trustees' or 'as trustees,' and regardless of whether a joint tenancy or right of survivorship as between such persons is expressed or not, then, if no beneficiary be indicated or named in said instrument, it shall be presumed that said person or persons, as the case may be, holds or hold the title to the estate, interest, lien or encumbrance absolutely in his or their own individual right and free from any trust, and an instrument executed by such person or persons, whether purporting to be the act of such person or persons in his or their individual right, or in his or their capacity as trustee or trustees, shall prima facie affect such estate, interest, lien, or encumbrance according to the tenor of such instrument. As to such instrument last mentioned and any judgment against such person affecting the title, such presumption shall be and become conclusive as to

[5]Unless otherwise indicated, all statutory references are to the Civil Code.

such undisclosed beneficiary and the original grantor or trustor and anyone claiming under them in favor of a purchaser or encumbrancer in good faith and for valuable consideration upon the filing of such instrument last mentioned for record in the office of the recorder of the county wherein the land affected thereby is situated."

Adverting to the present case, we cannot question that this section has applicability since title to the subject property appeared as of record in the name of "Merle Hansen, trustee" and no beneficiary was indicated. (See *Nevada Irrigation Dist.* v. *Jones,* 69 Cal.App.2d 262, 266-267 [158 P.2d 973].) ▉ Accordingly, since the subject property was conveyed to Merle as "trustee" there is a statutory presumption under section 869a that he held title to the property absolutely and in his own individual right and free from any trust. (*Nevada Irrigation Dist.* v. *Jones, supra,* p. 267.) Appellant argues that this presumption is conclusive; respondent, that it is rebuttable.

As we read and interpret the pertinent language of section 869a its application is segmented to cover two situations. The first part of the section applies where an estate or interest in, or lien or encumbrance on real property is conveyed, created, aliened or encumbered by an instrument in writing *to* or *in* the name of a person who is designated as a "trustee" and no beneficiary is indicated or designated in the instrument. In this situation section 869a provides that *"it shall be presumed"* (italics added) that such person holds the title to the property absolutely in his "own individual right" and "free from any trust. . . ."" Since this provision does not specifically declare that the presumption therein provided for is conclusive, it would appear that the presumption as to the holding of title free from trust is a rebuttable one. (Code Civ. Proc., § 1961;[6] see also Code Civ. Proc., § 1962.)

The latter part of the pertinent language of section 869a quoted above, commencing with the words "and an instrument executed by such person," refers to the situation where the person in whose name the property has been conveyed or encumbered as "trustee" without designation of a beneficiary conveys *out* or encumbers the property by an instrument executed by him. As to this situation, section 869a first provides

---

[6]Code Civ. Proc., § 1961 provides: "A presumption (unless declared by law to be conclusive) may be controverted by other evidence, direct or indirect; but unless so controverted the jury are bound to find according to the presumption."

that such instrument shall "prima facie affect such estate, . . . according to the tenor of such instrument." ▮ The meaning of this language, when read in conjunction with the language preceding it, is that when such person, by an instrument, conveys or encumbers the estate, whether purporting to be his act individually or as trustee, there is a presumption that such estate was conveyed or encumbered according to the provisions and purport of the instrument. It is apparent that the Legislature used the words "shall prima facie affect" in the sense of a rebuttable presumption since the language in the very next sentence refers to the terminology of the preceding clause as a "presumption." ▮ Moreover, the term "prima facie evidence" ("prima facie" being a term which relates to evidence—see Code Civ. Proc., § 1833, defining "prima facie evidence") is presumptive in character, there being no difference in law between the quantum and character of evidence necessary to overcome a "prima facie" showing and that necessary to overcome a presumption. (See *People* v. *Fitzgerald*, 14 Cal. App.2d 180, 206-207 [58 P.2d 718] ; Code Civ. Proc., § 1961; and see *Maganini* v. *Quinn*, 99 Cal.App.2d 1, 8 [221 P.2d 241] ; *Frank Meline Co.* v. *Kleinberger*, 108 Cal.App. 60, 62-63 [290 P. 1042].)

Appellant, however, relies on the language which follows the last-mentioned provision having reference to the prima facie character of the instrument. This language reads as follows: *"As to such instrument last mentioned* and any judgment against such person affecting the title, *such presumption* shall be and become conclusive as to such undisclosed beneficiary and the original grantor or trustor and anyone claiming under them in favor of a purchaser or encumbrancer in good faith and for valuable consideration upon the filing of such instrument *last mentioned* for record in the office of the recorder of the county wherein the land affected thereby is situated." (Italics added.) It is apparent that this language is interrelated with the "prima facie" presumption created by the preceding portion of this section, and, like the "prima facie" presumption, has applicability only where there is an instrument executed by the person holding title "as trustee." ▮ Thus, where such instrument is filed for record and the person claiming thereunder proves that he is a bona fide purchaser or encumbrancer for valuable consideration, the "prima facie" presumption created by the preceding sentence becomes conclusive as to such

instrument and any judgment against the person executing the instrument affecting the title to such property.

In sum, as we interpret section 869a, whenever an estate or interest in real property is conveyed or created by an instrument in writing *to* or *in favor* of a person in trust, or under the designations "trustee" or "as trustee," the beneficiary of such trust or the true owner of such property may establish his equity or ownership by evidence sufficient to overcome the rebuttable presumption that the person holding title to the property does so in his individual right and free from any trust. Also, as to any person dealing with the holder of such title the Legislature has seen fit to give the former no more than the benefit of a rebuttable presumption and to impose upon the latter the burden of overcoming such presumption. On the other hand, when the holder of such title executes an instrument dealing with such property *out* from himself, and such instrument is filed for record, the person obtaining an interest under this instrument is entitled to avail himself of the conclusive presumption hereinbefore mentioned, provided that he can show that he is a bona fide purchaser or encumbrancer for value. If such instrument is not recorded or if such person is unable to show that he is a bona fide purchaser or encumbrancer for value the presumption that the holder of the title conveyed or encumbered the property according to the tenor of the instrument is a rebuttable one only.

It should be here noted that the practice of transferring property with the use of the words "trustee" or "as trustee" following the name of the grantee, without setting out the nature of the trust or the name of the beneficiary, is a common practice the reasons for which are numerous and varied. (See 137 A.L.R. 460.) Moreover, in many such instances no real trust exists. It is the general rule in most jurisdictions that "In such a case the form of the instrument is held sufficient to indicate that the land is or may be held in trust, and a transferee of the property is not entitled to ignore the form of the instrument. He takes subject to the trust, if a trust in fact existed, and if the transfer to him was in breach of trust, and if by a reasonable inquiry he would have ascertained these facts." (Scott on Trusts (2d ed.) vol. 3, § 297.3, pp. 2213, 2216.) Stating that as a result of this rule land may be practically unsalable, "since no conveyancer would approve the transfer unless it could be definitely shown that no trust existed," Scott notes that several states,

including California by the enactment of section 869a, have enacted statutes in order to make the land salable to a purchaser "where the word 'trustee' is added to the name of the grantee in a deed of conveyance of land in which no beneficiaries are named, and the purposes of the trust are not set forth in the deed and no other instrument showing a declaration of trust is recorded. . . ." (P. 2216.) According to Scott, under such statutes, although the word "trustee" appears in the documents of title, *a transferee from the holder of such property* is entitled to protection as a bona fide purchaser. This last-mentioned analysis of the purpose of statutes such as section 869a appears to be consistent with our analysis and interpretation of the subject statute.

Adverting to the instant case, we are immediately concerned with whether the portion of section 869a which creates a conclusive presumption that the person holding the subject property as trustee did so in his individual right has applicability to the facts before us. This inquiry, in turn, requires a determination of whether we are here concerned with an instrument executed by Merle in favor of appellant. Clearly, Merle did not personally execute a conveyance to appellant whose claim to the subject property is based on the fact that it, as Merle's judgment creditor, purchased the subject property at the execution sale and received a sheriff's certificate of sale and subsequently a sheriff's deed to this property.

We are thus projected to the question whether, even though Merle did not personally execute the instrument by which appellant acquired the former's interest in the subject property, the sheriff's certificate of sale nevertheless had the same effect as if Merle had executed a deed to the property in favor of appellant. If it did, appellant, upon proving itself to be a bona fide purchaser, was entitled to the benefit of the conclusive presumption provided for in section 869a.

With respect to the derivation and character of the title of the purchaser at an execution sale it is established that the rights of such purchaser are substantially the same as though the debtor had made a voluntary transfer for value to the purchaser by assignment or quitclaim deed. (Code Civ. Proc., § 700;[7] *Noble* v. *Beach*, 21 Cal.2d 91, 94 [130 P.2d

---

[7]Code Civ. Proc., section 700, dealing with the sale of real property at execution sale provides in pertinent part as follows: "Upon a sale of real property . . . if the judgment is a lien upon the real property the purchaser is substituted to and acquires all the right, title, interest, and claim of the judgment debtor on or at any time after the day such judgment became a lien on such property; . . ."

426]; *Hansen* v. *D'Artenay,* 13 Cal.App.2d 293, 297, 301 [57 P.2d 202]; *Anglo-California Trust Co.* v. *Oakland Rys.,* 193 Cal. 451, 469 [225 P. 452]; *Southard* v. *McBrown,* 63 Cal. 545, 547; *Duff* v. *Randall,* 116 Cal. 226, 229 [48 P. 66, 58 Am.St.Rep. 158]; 19 Cal.Jur.2d, Executions, § 180, p. 605; see also *Riley* v. *Martinelli,* 97 Cal. 575, 580 [32 P. 579, 33 Am.St.Rep. 209, 21 L.R.A. 33]; *Manig* v. *Bachman,* 127 Cal. App.2d 216, 223 [273 P.2d 596].) ██ In *Anglo-California* we find this significant statement: ''There is no difference, so far as affects the equity of the interest conveyed, between a sale made voluntarily by the party himself and a sale made for him by a sheriff or commissioner who, in making it, acts as his agent.'' (P. 469.) ██ A sheriff's certificate of sale vests the equitable title in the purchaser subject to redemption, but if the property is not redeemed, it is evidence of his right to the dry legal title which remained in the judgment debtor. (*Foorman* v. *Wallace,* 75 Cal. 552, 556 [17 P. 680].) ██ Such certificate is an instrument whereby an interest or title is created within the meaning of section 1107 (*Foorman* v. *Wallace, supra,* p. 557), and, accordingly, is a conveyance within the meaning of the recording act. (*Duff* v. *Randall, supra,* p. 231.) ██ Thus, the recording of a sheriff's certificate of sale charges all subsequent purchasers with notice of the purchaser's title. (*Bateman* v. *Kellogg,* 59 Cal.App. 464, 485 [211 P. 46]; *Byrne* v. *Baker,* 221 Cal.App.2d 1, 7 [34 Cal.Rptr. 178].) ██ During the period of redemption the purchaser's title acquired by the certificate of sale is characterized as one ''defeasible upon condition subsequent'' (*Bateman* v. *Kellogg, supra,* p. 472), and although the transfer is not perfect until the execution of the sheriff's deed, the deed when executed is deemed and taken, under the doctrine of relation back, as though executed at the date when the lien of which it is the sequence originated. (*Foorman* v. *Wallace, supra,* p. 556; *Duff* v. *Randall, supra,* pp. 231-232; Code Civ. Proc., § 700.) ██ The effect of the sheriff's deed is not to create a new title but is merely evidence that the title of the purchaser has become absolute. (*Bateman* v. *Kellogg, supra,* pp. 472, 485; *Pollard* v. *Harlow,* 138 Cal. 390, 393 [71 P. 454, 648].)

██ Upon the analogy of the foregoing cases we are satisfied that the sheriff's certificate of sale to appellant had the same force and effect as a conveyance made by Merle, and as such, it prima facie affected the subject property according to its tenor. Upon its being filed for record it afforded appel-

lant the benefit of a conclusive presumption that Merle was the absolute owner of such property, provided, of course, that appellant could establish that it was a bona fide purchaser.

### The Bona Fide Purchaser Issue

On the issue whether appellant was a bona fide purchaser, the trial court found against appellant, the relevant findings of fact being that prior to recording its abstract of judgment appellant had notice that Merle held the subject property as trustee for another person, and that appellant was not a purchaser thereof in good faith and for a valuable consideration. Before proceeding to consider the sufficiency of the evidence to support this finding we should first discuss whether a judgment creditor who purchases at his own execution sale can, under any circumstances, be a bona fide purchaser for value within the purview of section 869a.

It is the rule in California that a mere judgment creditor is not entitled to protection as a bona fide purchaser for value, but, rather, stands in the shoes of the judgment debtor and obtains by his judgment lien only that interest in the property which the judgment debtor actually possesses. (*Burns* v. *Peters*, 5 Cal.2d 619, 625 [55 P.2d 1182]; *Boye* v. *Boerner*, 38 Cal.App.2d 567, 570 [101 P.2d 757].) Where, however, a judgment creditor purchases at his own execution sale, he may, under appropriate circumstances, be a bona fide purchaser for value. Accordingly, as against a prior transferee from the judgment debtor a judgment creditor who purchases at his own execution sale and who first records the sheriff's certificate of sale is entitled to protection as a bona fide purchaser for value under sections 1107 and 1214. (*Byrne* v. *Baker, supra,* 221 Cal.App.2d 1, 6-7; *Foorman* v. *Wallace, supra,* 75 Cal. 552, 554.) Similarly, the judgment creditor who purchases at his own execution sale has been held to be a bona fide purchaser for value as against the trustor of a resulting trust or the beneficiary of a secret trust, where the record title to the property involved stood in the name of the trustee alone with no mention of or reference to the existence of such an outstanding equity in another person. (§§ 856, 869; *Riley* v. *Martinelli, supra,* 97 Cal. 575, 580-584; *De Lany* v. *Knapp,* 111 Cal. 165, 169 [43 P. 598, 52 Am.St.Rep. 160]; *Koch* v. *Wilcoxon,* 30 Cal.App. 517, 522 [158 P. 1048]; *Pepin* v. *Stricklin,* 114 Cal.App. 32, 34 [299 P. 557].) The reason for this rule, as discussed in *Riley,* is that the judgment creditor by purchasing at the execution

sale furnishes valuable consideration for the conveyance in the form of a cancellation of the judgment debtor's preexisting indebtedness. "[T]he fact that he [the judgment creditor] advanced the purchase price last month or last year should not militate against his rights or alter his *status* in the eye of the law." (P. 582.)

Although there are no cases in this state which discuss whether a judgment creditor purchasing at his own execution sale may be a bona fide purchaser within the purview of section 869a, we see no reason, upon analogy, why the rule which the foregoing cases have applied in other situations should not apply to the instant case. The situation presented here is identical to that in which the protection of a bona fide purchaser is afforded to such judgment creditor under other statutes (i.e., §§ 856, 869, 1107 and 1214).　We hold, therefore, that a judgment creditor who purchases at his own execution sale may, under appropriate factual circumstances showing that he is in fact a purchaser in good faith, claim the status of a bona fide purchaser for value so as to avail himself of the conclusive presumption created by section 869a. On the basis of this conclusion, we turn to the evidence in the instant case in support of the trial court's finding that appellant was in fact not a bona fide purchaser.　Initially, however, it should be noted that the fact that the instrument by which Merle held the subject property contained the word "trustee" following his name does not preclude appellant from being a bona fide purchaser. Under the provisions of section 869a, this designation must be considered as surplusage and cannot be deemed to put a person who deals with the record title holder on notice of the existence of a trust. (See Bogert (2d ed.) Trusts and Trustees, § 893, pp. 177, 182-185.)

　In determining whether the instant findings are supported by evidence in the record our scope of review is limited to whether there is any substantial evidence to support the trial court's findings. (*Beeler* v. *American Trust Co.,* 24 Cal.2d 1, 7 [147 P.2d 583]; *Islas* v. *Islas,* 213 Cal. App.2d 412, 416 [28 Cal.Rptr. 850].)　"The finding of a trial court . . . is binding and conclusive on the appellate court if it is supported by sufficient evidence, or if it is based on conflicting evidence or upon evidence that is subject to different inferences. . . ." (*Mears* v. *Mears,* 180 Cal. App.2d 484, 500-501 [4 Cal.Rptr. 618]; *Lovetro* v. *Steers,* 234 Cal.App.2d 461, 470 [44 Cal.Rptr. 604].)

498

"To be a *bona fide* purchaser one must have purchased in good faith and for a valuable consideration and must have had no knowledge or notice of prior rights at the time of his purchase or at any time prior to payment of the purchase money." (*Frankish* v. *Federal Mortgage Co.,* 30 Cal.App.2d 700, 716 [87 P.2d 90]; *Wood* v. *American Nat. Bank,* 125 Cal.App. 248, 260 [14 P.2d 110].) In *Wood,* it was held that a purchaser or encumbrancer of real property who has notice that the property is held in trust is not a purchaser or encumbrancer in good faith within the meaning of the provision of section 869a. Moreover, we note that the burden was upon appellant to produce substantial evidence believed by the trial court that appellant was a bona fide purchaser. (*Manig* v. *Bachman, supra,* 127 Cal.App.2d 216, 223; *Bell* v. *Pleasant,* 145 Cal. 410, 413 [78 P. 957, 104 Am.St.Rep. 61]; *McLane* v. *Storr,* 75 Cal.App.2d 459, 464 [171 P.2d 534].)

Adverting to the evidence contained in the record as to whether appellant had notice of respondent's alleged equitable interest in the subject property, we note the following evidence supportive of the finding. In supplementary proceedings in the Los Angeles Superior Court on July 7, 1961, concerning the subject indebtedness, Merle was queried concerning the subject property and testified that he held the property as trustee for his stepdaughter. It should be noted that this testimony was given subsequent to the judgment rendered against Merle, but prior to the recordation of the abstract of said judgment on January 3, 1962. In addition to this testimony there was evidence that respondent's mother resided on the subject property since 1951. Both of these circumstances were such as to place upon appellant the duty of making inquiry as to the nature and extent of Merle's title. Merle's testimony that he held the property as trustee, even though false as to the identity of the beneficiary, brought to appellant's attention the fact that the ownership was other than the record showed it to be.

Insofar as the possession of the property by respondent's mother is concerned, it is well settled that "the possession of the tenant is notice of his landlord's title; that is to say, such possession is sufficient to put a person dealing with the property upon inquiry; and the law will charge him with notice of all those facts which he might have ascertained, had he pursued the inquiry with proper diligence." (*O'Rourke* v. *O'Connor,* 39 Cal. 442, 446-447; *White* v. *Ro-*

*senstein*, 8 Cal.App.2d 217, 223 [47 P.2d 358]; *Manig* v. *Bachman, supra,* pp. 221-222.) ▮▮▮ Accordingly, ''It is equally well settled that where a person who is a stranger to the record title of the vendor is in possession, the purchaser is under a duty to make inquiry of such stranger's rights, and failure to do so deprives him of the status of bona fide purchaser.'' (*Manig* v. *Bachman, supra,* p. 222; *Hunter* v. *Watson,* 12 Cal. 363 [73 Am.Dec. 543]; *Pell* v. *McElroy,* 36 Cal. 268.) ▮▮▮ In *Manig,* it was held that a purchaser at an execution sale is governed by the same rule as purchasers generally, and that, accordingly, the foregoing principles would apply to such a purchaser at an execution sale who purchased the interest of a person who held the legal title to property. There the subject property was purchased by Max Manig under a fictitious name, conveyed to his son Ernest on April 30, 1947, and reconveyed the following day to Max. Ernest recorded his deed from his father on October 21, 1949, while Max did not record his deed until February 15, 1952. It was held that the son's creditor, who had purchased the son's interest at an execution sale, could not prevail over the unrecorded deed if the father was in actual and notorious possession through his tenants, the judgment creditor being chargeable with notice of the rights of the tenants who were strangers to the record title. Accordingly, in the instant case appellant was chargeable with notice of the possession of the property by respondent's mother and, therefore, was under a duty to inquire as to the latter's rights and whether she was in possession as a tenant of Merle or respondent. We conclude, therefore, that the record contains sufficient evidence to support the trial court's finding that appellant was not a bona fide purchaser and thus not entitled to rely on the conclusive presumption of section 869a.[8]

## The Rebuttable Presumption

Since appellant was not a bona fide purchaser our inquiry resolves itself as to whether there was sufficient evidence in the record to overcome the rebuttable presumption provided

---

[8]There was also conflicting evidence which might have supported a contrary finding such as Merle's listing of the property as his asset on a financial statement submitted to appellant, and the entering into a compromise agreement between appellant's attorney and Merle in respondent's presence whereby the subject property would remain under attachment until an installment note executed by Merle would be paid in full. (Respondent admitted being present but denied hearing the conversation between the attorney and her husband or any mention of the Santa Cruz property.)

for by section 869a, and to sustain the trial court's findings upon which it concluded that respondent was the owner of the subject property. ▮ The presumption that Merle was the owner of the property constituted independent evidence to be weighed against the other evidence. Any evidence to the contrary raises a conflict to be determined by the trier of fact upon whom rests the function of determining the credibility of witnesses and the weight of the evidence. (*Smellie* v. *Southern Pac. Co.*, 212 Cal. 540, 549 [299 P. 529]; *Estate of Nidever*, 181 Cal.App.2d 367, 379 [5 Cal. Rptr. 343]; *Blackburn* v. *Drake*, 211 Cal.App.2d 806, 813 [27 Cal.Rptr. 651].) ▮ Accordingly, the testimony by respondent that she alone paid the full purchase price for the property, the costs of constructing a residence upon it, and the taxes and maintenance costs attributable to it, coupled with her testimony that she and Merle had an understanding that the realty belonged solely to her and the evidentiary effect of the March 24, 1947 deed from Merle to respondent as indicative of the spouses' intentions with regard to the ownership of this property, was sufficient to raise such conflict and to afford sufficient evidence to sustain the trial court's findings. ▮ Insofar as the conflict in respondent's testimony as to the source of the funds with which she purchased and improved the property, and the effect of the security transactions encumbering the property for Merle's benefit, these were matters for the trial court's resolution.

### The March 24, 1947 Deed

In addition to relying on section 869a whereby she asserted her right to the subject property based on her beneficial interest therein, respondent also attempted to defeat appellant's claim to the property on the basis that appellant took the property subject to the March 24, 1947 deed from Merle to respondent. ▮ Since we have determined that respondent has successfully defeated appellant's claim to the subject property under section 869a, we find it unnecessary to consider whether, had appellant prevailed under section 869a, it would nonetheless, under section 1214, have taken the property subject to respondent's interest based on this unrecorded deed.

### Priority Between Appellant and the Longs

Appellant's final contention on this appeal concerns the priority of its claim to the subject property vis-a-vis the claim of the Longs. ▮ Since the trial court determined

that respondent's claim to the property was superior to that of both appellant and the Longs, and since we have determined that the judgment must be affirmed, the question of the priority between the respective claims of appellant and the Longs has become moot. Accordingly, it is unnecessary for us to discuss this contention raised by appellant.

The judgment is affirmed.

Sullivan, P. J., and Sims, J., concurred.

A petition for a rehearing was denied September 3, 1965, and appellant's petition for a hearing by the Supreme Court was denied October 13, 1965. Traynor, C. J. and Mosk, J., were of the opinion that the petition should be granted.