[Civ. No. 11287. First Appellate District, Division One.—April 23, 1940.]

JOHN C. BOYE, Respondent, v. RALPH V. BOERNER et al., Defendants; HEDWIG BACKUS, Appellant.

Marshall Stimson, Noel Edwards and Charles Murstein for Appellant.

Kryne Vanden Akker for Respondent.

KNIGHT, J.—This is an action to quiet title to a lot in Los Angeles County. The plaintiff, John C. Boye,.was given judgment, and Hedwig Backus, a party defendant and cross-complainant, appeals. The question at issue was whether the rights acquired by respondent through the medium of a sheriff's deed, issued after sale under execution, in an attachment proceeding, brought against the owner of the lot, took precedence over appellant's unrecorded trust deed given by said owner several months prior to the levy of the writ of attachment.

The appeal was taken on the judgment roll alone, and the facts as they appear from the trial court's findings are these: During the times hereinafter mentioned the appellant was a resident of Wisconsin. Ralph V. Boerner, the owner of the lot and a party defendant herein, formerly lived in that state, and while living there became indebted to appellant in the sum of $850. In July, 1934, he delivered to appellant a promissory note for said amount and at that time it was agreed that he would give her security for its payment. Shortly afterwards he moved to California; and on October 1, 1934, he executed a new note for the amount of the indebtedness together with a deed of trust in her favor covering

the lot in question, and naming Southern Title Guaranty Company as trustee. On October 3, 1934, Boerner acknowledged the execution of the trust deed before a notary public named Chester Schofield and thereupon delivered the note and trust deed to Schofield with instructions to record the trust deed and mail the promissory note to appellant. Schofield neglected to do either; and on January 24, 1935, Earl J. Rose brought an action against Boerner and levied an attachment on said lot. Summons was served on Boerner on January 26, 1935, and on February 4, 1935, Schofield mailed the note to appellant and filed the trust deed for record with instructions to the recorder to forward the same to appellant upon its recordation; and this was done. Until appellant received the trust deed and the note through the mail she was unaware that either had been executed. On February 13, 1935, a default judgment was entered against Boerner in the Rose action, and on March 18, 1935, the property was sold by the sheriff at execution sale to Rose to satisfy his judgment against Boerner. Thereafter and on March 28, 1935, Rose assigned the certificate of sale to respondent John C. Boye, who brought the present action against Boerner and appellant to quiet title. Boerner defaulted, but appellant, besides answering, filed a cross-complaint to foreclose the deed of trust, and the cause was tried upon the issues raised thereby. The trial court's finding with respect to the purpose of giving the new note and the deed of trust was as follows: "that Ralph Boerner, in July of 1934, delivered a note in the sum of $850.00 to Hedwig Backus of Cedarburg, Wisconsin, and at that time it was orally agreed between Ralph Boerner and Hedwig Backus that he would give to Hedwig Backus security for the indebtedness mentioned in said note *and that the note and deed of trust mentioned in the cross-complaint of Hedwig Backus was intended by Ralph V. Boerner to be security for the then existing indebtedness.*" (Italics ours.) From the facts found the trial court concluded that the rights acquired by respondent through the sheriff's deed took precedence over appellant's unrecorded trust deed.

As pointed out by appellant, it has been held in numerous cases, among them being *Bank of Ukiah* v. *Petaluma Sav. Bank,* 100 Cal. 590 [35 Pac. 170], that the lien of an unrecorded mortgage given to secure a loan is created by the mere execution and delivery of the mortgage, and takes

precedence over a subsequent attachment lien; that in such case the attaching creditor is not deemed to be a *bona fide* purchaser for value within the meaning of section 1214 of the Civil Code, and that he takes only what interest the debtor has at the time of the attachment, and is entitled to nothing more. A more recent case holding to the same effect is *Burns* v. *Peters,* 5 Cal. (2d) 619 [55 Pac. (2d) 1182], wherein the court stated: "An attaching creditor is not a *bona fide* purchaser and when attaching property subject to a mortgage, *whether recorded or not,* he takes only the interest the mortgagor had at the time of the levy. (*Motor Acceptance Co.* v. *Finn,* 124 Cal. App. 766 [13 Pac. (2d) 761]; *Ahern* v. *Tulare Lake Canal Co.,* 115 Cal. App. 93 [1 Pac. (2d) 490]; *Iknoian* v. *Winter,* 94 Cal. App. 223 [270 Pac. 999]; *Richman* v. *Bank of Perris,* 102 Cal. App. 71 [282 Pac. 801]; *Eichler* v. *Gray,* 27 Fed. (2d) 328; *Farmers' Exchange Bank* v. *Purdy,* 130 Cal. 455 [62 Pac. 738].)'' (Italics ours.) ■ In other words, the well-settled rule is that there must be an interest to which a creditor's lien can attach; that such lien does not attach to a mere naked title, but only to the debtor's interest in the property at the time of the levy, and that therefore if at that time all title and interest has passed from him to a third person, the creditor gets nothing. (*Iknoian* v. *Winter,* 94 Cal. App. 223 [270 Pac. 999].) Furthermore, it is held that an attachment lien is not "an instrument first duly recorded" within the meaning of section 1107 of the Civil Code; hence that under the provisions of that code section an unrecorded deed takes precedence over a subsequent attachment lien (*Davis* v. *Perry,* 120 Cal. App. 670 [8 Pac. (2d) 514]); ■ and with respect to the legal effect of a deed of trust it has been definitely determined that where as here it is executed for the purpose of securing a debt, it conveys title so far as may be necessary to the execution of the trust. (*Wasco Creamery etc. Co.* v. *Coffee,* 117 Cal. App. 298 [3 Pac. (2d) 588].)

■ Respondent does not challenge the soundness of the foregoing legal doctrines. Quite to the contrary he "concedes the law to be well settled that an attaching creditor takes subject to the lien of a delivered but unrecorded deed of trust''; but, as pointed out by him, before a party claiming under an unrecorded mortgage or deed is entitled to the benefit of the priority doctrine it must appear that there

has been a valid delivery of the instrument prior to the attachment levy (*Hibberd* v. *Smith,* 67 Cal. 547 [4 Pac. 473, 8 Pac. 46, 56 Am. St. Rep. 726]); and respondent contends that for want of assent on the part of appellant the delivery of the trust deed in the present case, as against the attaching creditor, did not become effectual as claimed by appellant on October 3, 1934, at the time the instrument was delivered to Schofield with instructions to record the same, but, as found by the trial court, was complete only on or about February 4, 1935, when appellant received the instrument through the mail, which was subsequent to the date of the attachment levy; and that consequently the rights of appellant under the unrecorded trust deed were subordinate to those acquired by the attachment lien. We are unable to sustain respondent's contention.

Civil Code, section 1059, relating to constructive deliveries of grants reads as follows: ''Though a grant be not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered in the following cases: 1. Where the instrument is, by the agreement of the parties at the time of execution, understood to be delivered, and under such circumstances that the grantee is entitled to immediate delivery; or, 2. Where it is delivered to a stranger for the benefit of the grantee, and his assent is shown, or may be presumed.'' And here the facts show that at the time of the execution of the trust deed and at the time of its delivery to Schofield there was a *bona fide,* existing understanding and agreement between Boerner and appellant to the effect that Boerner would give to appellant and that she would accept security for the payment of the outstanding debt; that it was pursuant to and in consummation of such understanding and agreement that Boerner executed the deed of trust and delivered the same unconditionally to Schofield for appellant with instructions to file the same for record; that when Boerner thus delivered the trust deed to Schofield for appellant he did so with the intention that it should operate as a present transfer; and the instrument was admittedly for the benefit of appellant. Assuming, therefore, that, as respondent claims, the case falls properly within the scope of the second subdivision of said code section, it is our conclusion that the facts above narrated, as a matter of law, establish an assent on the part of appellant to the transaction involving the execution of the trust deed by Boerner

and the unconditional delivery thereof to Schofield sufficient to satisfy the requirement of said code section; at least they were such, when considered in connection with the additional fact that the instrument was in fact beneficial to appellant, to call for the application, as a matter of law, of the presumption of assent afforded by said code section.

The trial court's decision, so respondent states in his brief, was based solely on the case of *Hibberd* v. *Smith, supra,* which was later followed in deciding the case of *Green* v. *Skinner,* 185 Cal. 435 [197 Pac. 60]. The factual situations in those cases, however, were essentially different from the one here presented in these vital respects: In neither of those cases was the conveyance executed by the grantor and delivered by him to a third party in performance of a prior existing agreement between the parties to the conveyance; furthermore there was an entire absence of any facts or circumstances from which it could be inferred that the grantee had the slightest intimation of the grantor's intention to make the conveyance; and admittedly there was no moral, legal or financial obligation on the part of the grantor, as there was here, to make the conveyance. In each of those cases the execution of the conveyance and the delivery thereof by the grantor to a third party, was purely a voluntary, gratuitous act on the part of the grantor. In short, there was not in either of those cases a single fact or circumstance tending to show, or from which it might be fairly presumed, that the grantee ever assented to the execution and delivery of the conveyance, prior to the time the rights of third parties intervened. Moreover, in the Hibberd case, the nature of the transaction was such as to justify the court in saying that it did not feel assured that the deed in question was for the benefit of the grantee. For the foregoing reasons we are unable to agree with respondent that the cases relied upon by him are here controlling.

■ As said in the Hibberd case, if presumptive assent be indulged, there is no rule of law fixing the time when such assent must be held to have been given. It may properly be held, therefore, in cases of this kind, that where there is a *bona fide* indebtedness existing between the parties, the fact that the conveyance in question is given for the benefit of the grantee, pursuant to and in consummation of an agreement previously entered into between them and in consideration of such indebtedness, in itself, as a matter of law, es-

tablishes that the grantee assented thereto. Moreover, as pointed out in the Hibberd case, the rule requiring the assent of a grantee to a grant has its origin in the principle that the law does not force a person to take an estate against his will (*Townson* v. *Tickell,* 3 Barn. & Ald. 36; *Thompson* v. *Leach,* 2 Vent. 198) ; and obviously where the conveyance is executed and delivered pursuant to and in consummation of a previous agreement between the parties the legal principle mentioned does not enter into the case.

It is our conclusion, therefore, that under the facts found respondent's rights under the sheriff's deed are subordinate to those of appellant under the unrecorded trust deed; accordingly the judgment is reversed with directions to revise the conclusions of law to conform to the views herein expressed and thereupon to enter judgment in appellant's favor on the cross-complaint.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 23, 1940, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 20, 1940.