[Civ. No. 43668. Second Dist., Div. One. Mar. 14, 1975.]

CITY OF TORRANCE et al., Plaintiffs, Cross-defendants and Respondents, v.
YVONNE CASTNER, Defendant, Cross-complainant and Appellant.

COUNSEL

Douglas C. Phillips for Defendant, Cross-complainant and Appellant.

Stanley E. Remelmeyer, City Attorney, Roger P. Freeman, Deputy City Attorney, and L. Thomas Murphy for Plaintiffs, Cross-defendants and Respondents.

**OPINION**

**HANSON, J.—**

### THE CASE

The respondents City of Torrance (hereinafter City) and Mary Coulter (hereinafter Coulter) filed a "Complaint for Declaratory Judgment and Claim and Delivery; Conversion and Contract," pertaining to certain oil paintings by the artist William Ernest Root, also known as "Bill Brootip" (hereinafter Root), naming appellant Yvonne Castner (hereinafter Castner) and Douglas C. Phillips, an attorney (hereinafter Phillips), as defendants.

Appellant Castner and defendant Phillips answered the complaint and appellant Castner filed a cross-complaint, naming the City, Coulter and her former husband, Root, as cross-defendants, seeking to recover $1,650, interest and exemplary damages in the sum of $25,000 for breach

of contract, conspiracy and fraud allegedly perpetrated upon her by the cross-defendants.

The City and Coulter filed a demurrer to the cross-complaint upon the ground that the cross-complaint failed to state facts constituting a cause of action. Subsequently, following the filing by Castner of her first amended cross-complaint, the City moved to strike the amended cross-complaint and demurred to the cross-complaint. Cross-complainant opposed the motion to strike the cross-complaint and demurrer, and Castner and Phillips filed their own motion for summary judgment.[1]

The trial court denied the motion of defendants Castner and Phillips, granted plaintiffs City and Coulter's motion to strike the cross-complaint, and entered judgment for plaintiffs on the ground that there was no defense to the action and no triable issues of fact. Judgment was entered in favor of respondent Coulter, holding that she had title to 16 of the 23 paintings and to seven remaining picture frames, held City harmless, and dismissed the action against Phillips.

Defendant/cross-complainant Castner appeals from the judgment.

THE FACTS

The chronology of events which precipitated the litigation at bench is as follows:

Between 1969 and 1970 respondent Coulter, plaintiff below, who owned an art gallery, purchased a number of paintings from Root for good and valuable consideration. The oil paintings by Root (aka "Bill Brootip") consisted of a series of impressions of early Torrance which included: "Old Torrance Fire Station," "Rebuilding Old Torrance Fire Station," "Larry Parks Plumbing and Harvel's Garage," and a "Self Portrait of Bill Root."

---

[1]"THE COURT: I take it there are no disputes on the facts now. That this is a motion for summary judgment.

"MR. PHILLIPS: Yes, your Honor.

"THE COURT: There are no disputes on the facts. It is a question of law. Do you agree with that?

"I take it that you agree?

"MR. FREEMAN: Yes.

"THE COURT: The matter can be resolved now on legal issues.

"MR. FREEMAN: That is correct.

"MR. PHILLIPS: That is correct."

In April of 1971 respondents Coulter and the City made an arrangement whereby the paintings would be loaned to the City for display in the Torrance Civic Center Library. While the paintings were on display, the appellant Castner, defendant/cross-complainant below, was awarded a judgment against Root, her former husband. (Root v. Root, Los Angeles Superior Court case No. SWD-13284.) Subsequently, on June 25, 1971, a writ of execution was issued and served on respondent City to levy on "all personal property, money and credits in your possession or under your control belonging to . . ." William Ernest Root. In response to the writ of execution, Russell J. West, the Torrance City Librarian, indicated that the 23 oil paintings on display in the Civic Center Library were Root's property. Thereafter the paintings were removed from the City's possession.

On July 7, 1971, notice of the marshal's sale of these paintings was made by Lieutenant Bernard Morgan of the marshal's office. At the sale conducted on July 21, 1971, appellant Castner purchased the series of 23 paintings of early Torrance for $200, not for cash, but merely crediting the $200 to the amount of her judgment against Root. Subsequent to the marshal's sale Castner negotiated with the City for the sale of 11 of the paintings for a purchase price of $1,650.

It was not until after the writ of execution, levy and subsequent sale of her paintings that respondent Coulter learned that someone other than the City was in possession of the paintings. She (Coulter) contacted the City and apprised them of the situation and the City immediately cancelled payment on its check to the appellant Castner for the purchase price of the 11 paintings and filed suit to obtain a judicial determination of the rights of the various parties to the paintings which culminated in this appeal.

## THE ISSUE

At the time appellant Castner, the judgment creditor, levied on the paintings, title to them had already passed from Root, the judgment debtor, to respondent Coulter. Appellant Castner claims title to the paintings, not by operation of the execution and levy, but as a bona fide purchaser at the subsequent marshal's sale. Therefore, the key and controlling issue on appeal is whether or not a judgment creditor, who purchases personal property (allegedly owned by the judgment debtor) at a marshal's sale by crediting the purchase price toward the judgment, is a bona fide purchaser thus depriving the true owner, who had

purchased the property from the judgment debtor prior to the levy of execution, of title.

## Discussion

■ It is the rule in California that a judgment creditor is not entitled to the protection as a bona fide purchaser for value, but, rather, stands in the shoes of the judgment debtor and obtains by his judgment lien only that interest in the property which the judgment debtor actually possesses. (See *Burns* v. *Peters,* 5 Cal.2d 619, 625 [55 P.2d 1182]; *Ward* v. *Waterman,* 85 Cal. 488, 508 [24 P. 930]; *Boye* v. *Boerner,* 38 Cal.App.2d 567, 570 [101 P.2d 757]; *Hansen* v. *G & G Trucking Co.,* 236 Cal.App.2d 481 [46 Cal.Rptr. 186].) This rule applies to personal property as well as real property. (*LeGrand* v. *Russell,* 52 Cal.App.2d 279 [126 P.2d 136].)

The appellant relies on the cases of *Widenmann* v. *Weniger,* 164 Cal. 667, 672 [130 P. 421], and *McCune* v. *McCune,* 23 Cal.App.2d 295 [72 P.2d 883], for the proposition that a purchaser at an execution sale, who buys for value and without notice, is a bona fide purchaser who takes free from prior interests.

The *Widenmann* and *McCune* cases involved *real property,* as distinguished from the case at bench which involves *personal property.* The rationale and public policy considerations for the rule holding one a bona fide purchaser, and taking free from prior interests, was stated by the California Supreme Court in *Hunt* v. *Loucks,* 38 Cal. 372, at page 377, quoting from *Manning's* case (8 Coke 97, a): " 'If the sale of the term should be avoided, the vendee would lose his term and his money, too, and thereupon great inconvenience would follow, that none would buy of the Sheriff goods or chattels in such cases, and so execution of judgments (which is the life of the law in such case) would not be done; . . .' "

There is a split of authority as to whether a judgment creditor, who purchases *real property* at his own execution sale by not giving cash but merely crediting the amount of the bid against the judgment, ascends to the status of a bona fide purchaser. Under the appropriate circumstances, some courts have held a judgment creditor who purchases at his own execution sale may be a bona fide purchaser for value. These "appropriate circumstances" may occur as against a prior transferee from the judgment debtor where the judgment creditor purchases at the execution sale and first records the sheriff's certificate of sale. (*Riley* v. *Martinelli,*

97 Cal. 575, 582 [32 P. 579]; *Hansen* v. *G & G Trucking Co., supra,* 236 Cal.App.2d at p. 496; *Pepin* v. *Stricklin,* 114 Cal.App. 32, 34 [299 P. 557].) Other California decisions have held that the judgment creditor who purchases at his own execution sale for past consideration acquires only the interest the judgment debtor had in the property and therefore does not attain the status of a bona fide purchaser. *(Plant* v. *Smythe,* 45 Cal. 161; *Boye* v. *Boerner, supra,* 38 Cal.App.2d at p. 570; *Koch* v. *Wilcoxon,* 30 Cal.App. 517 [158 P. 1048].)

Even assuming, *arguendo,* that the *Riley-Pepin-Hansen* line of cases are to be followed, those cases involve the sale of *real property* and are based on the statutory requirement that interests in real property must be recorded. An unrecorded interest in such property represents a secret lien or equity which no purchaser without actual notice, be he a judgment creditor or otherwise, would discover.

In *Riley, supra,* like many other cases upholding the rights of a judgment creditor as a bona fide purchaser, the sale was of real property which was recorded in only one of the spouse's names. The plaintiff purchased the land and built the family residence with funds out of her separate property. There was a private understanding between the plaintiff and her husband, before the conveyance, that the title to the premises would be conveyed to the husband and that, at a later date, he would convey the premises back to plaintiff. The husband never made the conveyance. The deed was recorded in his name. The defendant Martinelli held a mortgage against the property of the husband on which he levied and sold. At the judicial sale, Martinelli, the judgment creditor, purchased the land. The plaintiff brought an action to quiet title. The court found that the plaintiff had the power for many years to enforce her equitable right to the property and failed to do so and held for the defendant who relied on the record title. The court, at page 583, quoting from *Hunter* v. *Watson,* 12 Cal. 363, 377, stated: " 'But a judgment creditor purchasing at his own sale, without notice, is a *bona fide* purchaser *within the act.* The cases are not agreed upon this subject, but the weight of authority and the reason of the rule are as we have stated it.' " (Italics added.) The *Riley* court then went on to state: "The act referred to in the foregoing quotation was the Recordation Act of 1850." (97 Cal. at p. 583.) These cases then hold that the foundation of the judgment creditor's status as a bona fide purchaser is in the recording statute, his reliance upon that act, and the equitable owner's failure to perfect that interest by complying with the statutory requirements of the act.

Therefore the rule announced in *Riley* does not control the case at bench, for here we are dealing with *personal property* and not an interest in *real property* which must be recorded.

The California Supreme Court's decision in *Sargent* v. *Sturm,* 23 Cal. 359, presents a factual pattern similar to the instant case and is more persuasive.

The *Sargent* case *(supra)* involved an action to recover a quantity of *personal property* in the form of lumber. The plaintiffs sold and delivered the lumber to one Smith. The court found that Smith had obtained the lumber by a fraudulent representation and therefore he never acquired any valid title. The defendant, who had a valid judgment against Smith, enforced that judgment by levy and an execution sale. At the sale the defendant purchased the lumber, not for present value, but by crediting the amount of his bid on his judgment against Smith. The court held for the plaintiff and went on to state at page 362: ". . . The defendant in this case, holds a claim which accrued before the sale; and as he paid nothing on his purchase at the execution sale, he cannot claim the right of a *bona fide* purchaser in such cases. If the amount of his bid on the property was applied as a credit on the execution and judgment, he can have the same canceled at any time by applying to the Court and showing that he obtained no title to the property by his purchase. [Citations.] By that means, he will be placed in the same position he was in before his purchase, and will have lost nothing thereby." The court also held that it was not necessary for the plaintiff to prove that the defendant participated in the fraud of Smith, for the plaintiff's cause of action was based on the absence of any title to the lumber in Smith and subsequent lack of title passing to the defendant.

■ In the case at bench, Root, the artist and former husband of Castner, like the judgment debtor Smith in *Sargent,* had no title to the personal property (the paintings) at the time of the levy or the judicial sale, having sold them to respondent Coulter. Appellant Castner, unlike the judgment creditor in *Sargent,* was on inquiry notice since the paintings were not in the possession of the judgment debtor Root, but in the hands of a stranger, the city. Therefore, even if we were to accept appellant's contention that a judgment creditor who purchases personal property at her own execution sale could attain the status of a bona fide purchaser, here the appellant has not met her burden of proving lack of notice. (*Manig* v. *Bachman,* 127 Cal.App.2d 216, 223 [273 P.2d 596].)

Also, appellant Castner, like the judgment creditor in *Sargent,* paid

nothing at the execution sale, but merely credited the amount of her bid against the prior judgment. Therefore, by canceling that credit against the judgment and returning the paintings and picture frames to the respondent Coulter, the appellant here, as the defendant in *Sargent (supra),* will be placed in the same position as she was in before the purchase, a creditor with an enforceable judgment.

We therefore conclude that appellant Castner was not a bona fide purchaser and Coulter was not deprived of her ownership of the paintings and frames.

Once determining that Coulter was not deprived of her ownership of the paintings and frames, it thus logically follows that the negotiated sale of 11 of the 23 paintings (which Castner purchased at the execution sale by crediting judgment debtor Root with $200) with the city for $1,650, being predicated upon a mutual mistake of fact that Root was the owner when, in fact, Coulter was, may properly be rescinded by the city. (See *Smith* v. *Zimbalist,* 2 Cal.App.2d 324 [38 P.2d 170]; Civ. Code, § 1689.)[2]

Appellant asserts the record is void of any contractual or statutory basis for the granting of $500 attorneys' fees. We agree. (See *Viner* v. *Untrecht,* 26 Cal.2d 261, 271 [158 P.2d 3].) The judgment is modified by striking therefrom: "6. Attorneys fees in the sum of $500."

The judgment is affirmed[3] as modified, each party to bear its own costs.

Lillie, Acting P. J., and Thompson, J., concurred.

---

[2]Civil Code, section 1689 reads in relevant part as follows:

"(b) A party to a contract may rescind the contract in the following cases:

"(1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party."

[3]Summary judgment was appropriate in this case, one of declaratory relief, since "[t]he propriety of the application of declaratory relief lies in the trial court's function to render such a judgment when only legal issues are presented for its determination." (*Exchequer Acceptance Corp.* v. *Alexander,* 271 Cal.App.2d 1, 11-12 [76 Cal.Rptr. 328]; *Spencer* v. *Hibernia Bank,* 186 Cal.App.2d 702, 712 [9 Cal.Rptr. 867].)