[No. B090779. Second Dist., Div. Three. Sept. 28, 1995.]

LAS TUNAS BEACH GEOLOGIC HAZARD ABATEMENT DISTRICT et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE CITY OF MALIBU, Real Party in Interest.

COUNSEL

Burke, Williams & Sorensen, Carl K. Newton, Virginia R. Pesola and Mary R. Gayle for Petitioners.

No appearance for Respondent.

Christi Hogin, City Attorney, for Real Party in Interest.

OPINION

**KLEIN, P. J.**—Petitioners Las Tunas Beach Geologic Hazard Abatement District and the board of directors thereof (the District) seek a writ of mandate directing the trial court to vacate its order denying the District's motion for summary judgment and to enter instead an order granting the motion.

The essential issue is whether real party in interest City of Malibu (the City) was entitled in the resolution forming the District to reserve the right to dissolve the District, and whether the City thereafter could order dissolution of the District pursuant to that condition of formation.

Because the Cortese-Knox Local Government Reorganization Act of 1985 (Cortese-Knox) (Gov. Code, § 56000 et seq.) prescribes the exclusive procedure for dissolution of a geologic hazard abatement district (GHAD), the condition purporting to reserve to the City the right to order dissolution of the District is unenforceable. The petition therefore is granted.

### FACTUAL AND PROCEDURAL BACKGROUND

In a prior action (the Ticor action), the state sued individual owners of property at Las Tunas Beach, Ticor, which sold lots to the owner parties, and several insurance carriers which insured title to the properties. That action sought removal of eight steel groins on Las Tunas Beach which had eroded since their installation 60 or more years ago. The matter concluded in a settlement which, inter alia, required Ticor to pay certain moneys to abate the hazard.

On October 22, 1991, the City adopted a formation resolution pursuant to Public Resources Code section 26500 et seq., creating the District, which is a GHAD within City boundaries. Apparently, the District was formed by the City in an expeditious manner to avoid jeopardizing the payment from Ticor.

The formation resolution contained various conditions, including one which permitted the City to dissolve the District if the City found the District's plan to abate the hazard was not feasible or would not serve the purposes of state law.

In April 1993, the City adopted a resolution which, inter alia, found the proposed plan would not serve the purposes of the Public Resources Code and that the adverse environmental consequences associated with the project would far outweigh any benefit to be achieved in terms of restoration of the beach and protection of the beachfront homes. The dissolution resolution purported to order the District's board of directors to proceed forthwith with dissolution of the District.

On April 4, 1994, the District filed a declaratory relief action seeking a judicial determination the City lacked jurisdiction or authority to order the District to dissolve and a permanent injunction enjoining the City from attempting to exercise any jurisdiction or authority over the District.

On October 6, 1994, the District filed a motion for summary judgment. It argued: it was a valid entity of the State of California constituted pursuant to Public Resources Code section 26500 et seq.; the procedures for formation of a GHAD set forth in section 26500 et seq. are exclusive; and, the City acted in excess of the authority granted it by section 26500 et seq. by imposing conditions on formation of the District and in adopting a resolution ordering the District to dissolve, which actions were void ab initio.

In opposition, the City contended: the District's action was time barred; the City was entitled to impose conditions on the formation of the District which were not in conflict with state law; the conditions of formation were not severable from the formation resolution, so that if the conditions were invalid, so was the resolution of formation; and in any event, the District should be estopped from denying it was bound by the conditions since the proponents of the formation induced the City to adopt the formation resolution by representing the District would be bound by the conditions.

On February 3, 1995, the trial court denied the District's motion for summary judgment. It ruled: "It is clear that [the District] was permitted to form in an accelerated fashion by Malibu only through [the District's] willingness to agree to a number of things. . . . Most noteworthy is the provision . . . that Malibu could compel dissolution if it found [the District's] modified plan inadequate: . . . [¶] . . . [¶] [The District] would appear to be blocked by equitable estoppel. [The District] needed . . . to be approved and formed in order to get the settlement money from Ticor . . . .

[The City] alleges that [the District] convinced the City Council it would abide by the conditions set forth as long as a 'limited GHAD' was formed. . . . Based on such facts, [the District] must be estopped from asserting that the conditions are invalid."

The District filed the instant petition. We issued an alternative writ.

## CONTENTIONS

The District repeats its trial court assertions: it cannot be estopped from asserting lack of jurisdiction; the conditions purporting to authorize the City to exercise jurisdiction over the District were void ab initio and therefore the conditions cannot be validated by a curative statute or by the passage of time; and, the City's contract theory is without merit.

The City continues to argue the instant action is time barred; the City may impose conditions on the formation of a district which are not in conflict with state law; the conditions are not severable from the formation resolution; and, the trial court properly concluded the District is estopped to deny it is bound by the conditions.

We address the relevant issues in the discussion, *post.*

## DISCUSSION

1. *In Cortese-Knox, the Legislature enacted a broad comprehensive statutory scheme dealing with the formation and dissolution of districts.*[1]

In Cortese-Knox, at Government Code section 56000 et seq., the Legislature enacted a broad statutory scheme covering changes of organization of districts as well as cities.[2] Government Code section 56100 declares in pertinent part ". . . this division provides the sole and exclusive authority and procedure for the initiation, conduct, and completion of changes of

---

[1]None of the papers, either below or at this level, addressed Cortese-Knox. (Gov. Code, § 56000 et seq.) Because it appeared to this court said statutory scheme governs the dissolution of a GHAD and is dispositive of the issues presented by the petition, in accordance with Government Code section 68081, we notified the parties prior to oral argument of our concerns and invited supplemental briefing.

[2]In 1985, the Legislature adopted Cortese-Knox (Gov. Code, § 56000 et seq.), thus superseding the Knox-Nisbet Act (former Gov. Code, § 54773 et seq.), the District Reorganization Act of 1965 (former Gov. Code, § 56000 et seq.), and the Municipal Organization Act of 1977 (MORGA) (former Gov. Code, § 35000 et seq.). (Stats. 1985, ch. 541, §§ 1-4, pp. 1920-2024; *Malibu Committee for Incorporation* v. *Board of Supervisors* (1990) 222 Cal.App.3d 397, 401 [271 Cal.Rptr. 505].)

organization and reorganization for cities and districts." A change of organization is defined as any of the following: city incorporation and disincorporation, *district formation and dissolution*, annexation to or detachment from a city or district, consolidation of cities or special districts, and a merger or establishment of a subsidiary district. (Gov. Code, § 56021.) District dissolution is defined as "the dissolution, disincorporation, extinguishment, and termination of the existence of a district and the cessation of all its corporate powers, except for the purpose of winding up the affairs of the district." (Gov. Code, § 56035.) ██ Thus, the Legislature has established a comprehensive scheme governing district formation and dissolution.

In *Ferrini v. City of San Luis Obispo* (1983) 150 Cal.App.3d 239 [197 Cal.Rptr. 694], involving MORGA, the predecessor to Cortese-Knox, the municipality completed the annexation of Ferrini's acreage in accordance with the statutory scheme. Thereafter, the electorate approved a charter amendment requiring voter approval of annexations, a special election was held on the Ferrini annexation and the annexation was rejected. Ferrini brought a declaratory relief action. The trial court held the charter amendment was unconstitutional and the annexation was valid and effective. (*Id.*, at pp. 242-243.)

The reviewing court affirmed. It held: "[T]he municipal charter may not contain provisions pertaining to annexation which are contrary to the general laws of statewide application. 'The annexation of territory to a city is governed by the general laws of the state and is not a municipal affair [citation], . . .' [¶] The intention of the state Legislature to occupy the field in annexation procedures is evidenced by its declaration that MORGA shall provide the exclusive method for changes of organization . . . which include annexations . . . . '[W]here the statute contains express provisions indicating that the Legislature intends its regulations to be exclusive within a certain field, local government may not legislate in that field.' " (*Ferrini v. City of San Luis Obispo, supra*, 150 Cal.App.3d at p. 247.)

Unlike *Ferrini*, where the voters attempted to overrule a previously approved and completed annexation process, in *L.I.F.E. Committee v. City of Lodi* (1989) 213 Cal.App.3d 1139, 1148 [262 Cal.Rptr. 166], the voters attempted to reserve the right to halt annexation before it could commence. *L.I.F.E. Committee* held "[e]ither scheme interferes with and frustrates state annexation procedures and cannot be sustained." (*Ibid.*)

*Overview of proceedings pursuant to Cortese-Knox.*

Pursuant to Cortese-Knox, a local agency formation commission (LAFCO) exists within each county. (Gov. Code, §§ 56027, 56325.) The role

of LAFCO is to "review and approve or disapprove with or without amendment, wholly, partially, or conditionally, proposals for changes of organization or reorganization." (Gov. Code, § 56375, subd. (a).)

Proceedings before LAFCO "for a change of organization or a reorganization may be initiated by petition or by resolution of application . . . ." (Gov. Code, § 56650.) A resolution of application is a resolution adopted by the legislative body of an affected local agency proposing a change of organization. (Gov. Code, § 56800.)

Upon LAFCO's approval of a proposed change of organization, the "conducting authority" holds further proceedings on the proposal. (Gov. Code, § 57000.) For changes of organization involving the dissolution of a district, the conducting authority is the board of supervisors of the county in which the affected territory is located. (Gov. Code, § 56029, subd. (d)(3).) At the hearing, the conducting authority receives any protests, objections or evidence on the proposal. (Gov. Code, § 57050, subd. (b).)

The conducting authority then adopts a resolution on the protests which may have been filed, and if the protests are not in the majority, the conducting authority, by resolution, orders the change of organization, subject to confirmation by the voters unless certain requirements are met. (Gov. Code, § 57077.)

*2. Cortese-Knox does not preclude enactment of other statutory schemes to address formation or other matters pertaining to particular types of districts.*

Although the Legislature has occupied the field with respect to changes of organization of districts, thereby preempting *local* law, Cortese-Knox is not the sole statutory scheme pertaining to district formation. It shares the field with other such statutory schemes applicable to particular types of districts. Our focus here is on the GHAD scheme, found at Public Resources Code section 26500 et seq.

*a. Public Resources Code section 26500 et seq., not Cortese-Knox, controls the formation of a GHAD.*

By way of background, the GHAD law, found at division 17 of the Public Resources Code, authorizes the formation of such districts. (Pub. Resources Code, § 26500 et seq.) Public Resources Code section 26525, subdivision (a), states a geologic hazard abatement district may be formed pursuant to

this division for the purpose of "prevention, mitigation, abatement, or control of a geologic hazard."[3] A geologic hazard "means an actual or threatened landslide, land subsidence, soil erosion, earthquake, fault movement or any other natural or unnatural movement of land or earth." (Pub. Resources Code, § 26507.) A GHAD which is formed pursuant to Chapter 2 (Pub. Resources Code § 26525 et seq.) "is a political subdivision of the state. [Such a] district is not an agency or instrumentality of a local agency." (Pub. Resources Code, § 26570.)[4]

Cortese-Knox broadly defines "district" as "an agency of the state, formed pursuant to general law or special act, for the local performance of governmental or proprietary functions within limited boundaries." (Gov. Code, § 56036, subd. (a).) That section enumerates various types of agencies which are not *districts or special districts* within the meaning of Cortese-Knox. (Gov. Code, § 56036.) GHAD's are *not* specifically excluded therein from the definition of agencies subject to Cortese-Knox. (Gov. Code, § 56036.)[5]

██ Nonetheless, the general provisions of Cortese-Knox pertaining to *district formation* do not apply to the formation of a GHAD because the law dealing with GHAD's contains its own more specific formation procedures: a routine formation procedure, pursuant to chapter 2 (Pub. Resources Code, § 26525 et seq.) and an emergency formation procedure pursuant to chapter 2.5 (Pub. Resources Code, § 26568 et seq.). Given these provisions in the law relating to GHAD's with respect to the *formation* of a GHAD, pursuant to settled rules of statutory construction, said special provisions control over the more general provisions of Cortese-Knox relating to district formation. (*Estate of Mason* (1990) 224 Cal.App.3d 634, 638 [274 Cal.Rptr. 61].)

The legislative history of Senate Bill No. 1195, 1979-1980 Regular Session, which led to the enactment of Public Resources Code section 26500 et

---

[3]We have taken judicial notice of various legislative materials dealing with the adoption of division 17 of the Public Resources Code. (Evid. Code, §§ 452, subd. (c), 459; see *Commodore Home Systems, Inc. v. Superior Court* (1982) 32 Cal.3d 211, 218, fn. 9 [185 Cal.Rptr. 270, 649 P.2d 912]; *Franklin v. Appel* (1992) 8 Cal.App.4th 875, 888, fn. 5 [10 Cal.Rptr.2d 759].) Those materials indicate this legislation was sponsored by the City of Rancho Palos Verdes in the wake of landslide problems in the Portuguese Bend area. Apparently, an objective of the bill was to shift liability for abatement projects from cities to the proposed districts.

[4]However, a district which is the product of an emergency formation (Pub. Resources Code, § 26568 et seq.) is not an entity separate and distinct from the local agency within which it is formed. (Pub. Resources Code, § 26569.5.)

[5]Although Public Resources Code section 26571 states a GHAD "is not a *special district* within the meaning of Section 56036 of the Government Code" (italics added), it does not state a GHAD is not a "district" within the meaning of Government Code section 56036. Thus, GHAD's are not excluded by Public Resources Code section 26571 from the definition of "districts" covered by Cortese-Knox.

seq., discloses an awareness the *formation* of a GHAD would be exempt from the LAFCO process. (See, e.g., enrolled bill rep. to Governor on Sen. Bill No. 1195 (1979-1980 Reg. Sess.) dated Sept. 25, 1979.) That exemption gave rise to criticism that the bill invited poor planning and a circumvention of state planning mandates. In any event, because the law relating to GHAD's contains specific provisions governing the *formation* of a GHAD, those provisions control over the more general provisions of Cortese-Knox relating to district formation. (*Estate of Mason, supra,* 224 Cal.App.3d at p. 638.)

 b. *Other statutory schemes pertaining to specific districts contain their own formation procedures.*

The provisions in the Public Resources Code pertaining to GHAD formation are paralleled by other statutory schemes which contain their own formation provisions instead of resorting to Cortese-Knox. ■ Although Cortese-Knox purports to occupy the field with respect to district formation (Gov. Code, §§ 56021, subd. (b), 56100), a selective review of the codes discloses Cortese-Knox co-exists with other statutory schemes which specifically address the formation of particular types of districts.

For example, mosquito abatement districts and vector control districts are authorized by Health and Safety Code section 2200 et seq. The formation of these districts is specifically governed by Health and Safety Code section 2210 et seq.

Similarly, under the Sanitary District Act of 1923 (Health & Saf. Code, § 6400 et seq.), the formation of sanitary districts is controlled by Health and Safety Code section 6420 et seq.

Thus, the provisions of Cortese-Knox are not the sole statutes pertaining to district changes of organization and Cortese-Knox does not preclude other, more specific statutes, pertaining to district changes of organization.

3. *Any gaps in the statutory schemes relating to districts are filled by Cortese-Knox, not by resort to common law theories.*

 a. *Cortese-Knox, not common law, governs dissolution of a GHAD.*

As indicated, GHAD's are *not* specifically excluded from the definition of districts subject to Cortese-Knox. (Gov. Code, § 56036.) However, the law authorizing GHAD's contains specific provisions pertaining to the *formation* of a GHAD, thereby excluding formation of a GHAD from Cortese-Knox. (Pub. Resources Code, §§ 26525 et seq., 26568 et seq.)

 On the other hand, the GHAD scheme found in the Public Resources Code does not contain any dissolution provision. Therefore, the dissolution procedures of Cortese-Knox, which pertain to districts generally, control the dissolution of a GHAD.[6]

The City disregarded the far-reaching Cortese-Knox scheme and purported to devise its own dissolution provision in the formation resolution. The City now seeks to utilize contract and estoppel principles to enforce the formation conditions which purported to empower the City to dissolve the District.

The City's reliance on these common law theories is misplaced. A GHAD is purely a creature of statute, unknown at common law. Further, Cortese-Knox expressly states it is "the sole and exclusive authority and procedure" for changes of organization, including district dissolution. (Gov. Code, §§ 56100, 56021, subd. (e).) The Legislature thus has evidenced its intention that Cortese-Knox provide the exclusive method for such changes of organization. (See *Ferrini* v. *City of San Luis Obispo, supra*, 150 Cal.App.3d at p. 247.) Therefore, the City's effort to enforce its home-grown formation condition pursuant to common law doctrines "interferes with and frustrates state [dissolution] procedures and cannot be sustained." *(L.I.F.E. Committee* v. *City of Lodi, supra*, 213 Cal.App.3d at p. 1148.)

We conclude the Public Resources Code's silence with respect to GHAD dissolution requires resort to Cortese-Knox, not to common law theories.

b. *Partial applicability of Cortese-Knox to GHAD's is consistent with other statutory schemes.*

Our conclusion that Cortese-Knox governs the dissolution of a GHAD although not its formation is consistent with other statutory schemes, which contain their own formation procedures but resort to Cortese-Knox for purposes of district dissolution.

For example, while the formation of mosquito abatement districts and vector control districts is governed by Health and Safety Code section 2210

---

[6]Presumably, the Legislature exempted formation of a GHAD from the extended LAFCO process due to the need to respond to geologic hazards in an expeditious manner. Thus, it provided for emergency formation of a GHAD (Pub. Resources Code, § 26568 et seq.) as well as a routine formation process (Pub. Resources Code, § 26525 et seq.) which may be completed expeditiously, as the instant case demonstrates. On the other hand, because dissolution of a GHAD would not be not accompanied by the same exigency as the formation of such a district, it was unnecessary to exempt the dissolution of a GHAD from Cortese-Knox.

et seq., the *dissolution* of these districts is dictated by Cortese-Knox, which applies to districts generally. (See Historical and Statutory Notes foll. Health & Saf. Code, §§ 2390 to 2398, 39 West's Ann. Health & Saf. Code (1990), p. 307.)

Similarly, while the formation of sanitary districts is controlled by Health and Safety Code section 6420 *et seq.,* dissolution thereof is covered by Cortese-Knox. (See Historical Note 39A West's Ann. Health & Saf. Code (1970) foll. Health & Saf. Code, §§ 6900 to 6907.5, p. 393.)

It would appear Cortese-Knox complements the statutory schemes pertaining to specific types of districts, such as GHAD's, by supplying the necessary procedures for changes of organization and thereby filling any gaps in the legislative scheme.[7]

4. *The City's arguments are without merit.*

a. *The District is not estopped to assert the invalidity of the condition being invoked by the City as a basis for dissolution.*

The City contends, and the trial court found, the District is estopped to challenge the validity of the conditions of formation because the District convinced the City it would abide by those conditions, which reserved to the City the right to order dissolution of the District. We find the estoppel argument meritless.

In *Pacific Scene, Inc.* v. *Peñasquitos, Inc.* (1988) 46 Cal.3d 407, 409 [250 Cal.Rptr. 651, 758 P.2d 1182], the Supreme Court was called upon to address whether an action under an equitable " 'trust fund' " theory could be maintained against the former shareholders of a dissolved corporation, to the extent of their distribution of corporate assets, when a defective product manufactured by the corporation causes injury after dissolution. The court concluded that in view of the detailed statutory remedies now encompassing virtually all claims previously asserted in equity against the former shareholders of dissolved corporations, the Legislature had occupied the field "and precluded resort to dormant common law doctrines for the provision of extra-statutory relief." (*Id.,* at p. 413.)

That rationale is equally applicable here. GHAD's derive purely from statute. Such districts are authorized by the Public Resources Code section

---

[7]Although Cortese-Knox purports to occupy the field with respect to changes of organization and reorganization for cities and districts (Gov. Code, § 56100), as demonstrated above, Cortese-Knox shares the field with other statutory schemes pertaining to districts.

26500 et seq., which speaks to their formation. Dissolution of GHAD's is governed by the extensive process set forth in Cortese-Knox. In view of the detailed statutory scheme pertaining to formation and dissolution of a GHAD, we reiterate, the Legislature has occupied the field so as to bar any nonstatutory change of organization.

Therefore, leaving aside the issue of whether estoppel will lie against the District as a governmental entity (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 496 [91 Cal.Rptr. 23, 476 P.2d 423]),[8] the comprehensiveness of the statutory scheme bars the City from invoking the equitable doctrine of estoppel to achieve dissolution of the District. (*Pacific Scene, Inc.* v. *Peñasquitos, Inc., supra,* 46 Cal.3d at p. 413.) The City could not disregard Cortese-Knox and purport to improvise its own dissolution procedure in the formation resolution. To allow the City to maintain it was induced by the proponents into adopting the resolution of formation in reliance on their representations the City would retain the power to order dissolution would wreak havoc with the statutory scheme, which prescribes the exclusive authority and procedure for dissolution. (Gov. Code, § 56100.)

### b. *The District's action is not time barred.*

The City also contends the instant action by the District seeking declaratory and injunctive relief from the City's dissolution effort is time barred. The City's statute of limitations argument rests on the First Validating Act of 1992 (Validating Act).

By way of background, the Validating Act was approved by the Governor on May 19, 1992, and took effect immediately as an urgency statute. It provides in relevant part: "All public bodies heretofore organized or existing under, or under color of, any law are hereby declared to have been legally organized and to be legally functioning as such public body." (Stats. 1992, ch. 62, § 3.) GHAD's are specifically mentioned within the Validating Act's definition of public bodies. (Stats. 1992, ch. 62, § 2(a).)

The Validating Act includes a statute of limitations provision which states in pertinent part: "Any action or proceeding contesting the validity of any

---

[8]*City of Long Beach* concluded ". . . the proper rule governing equitable estoppel against the government is the following: The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*City of Long Beach* v. *Mansell, supra,* 3 Cal.3d at pp. 496-497.)

action or proceeding heretofore taken under any law, or under color of any law, for the formation, . . . of any public body, . . . shall be commenced within six months of the effective date of this act; otherwise each and all of such matters shall be held to be valid in every respect legal and incontestable." (Stats. 1992, ch. 62, § 8.)[9]

■ Surprisingly, the City contends the instant action by the District is nothing more than an attack on the conditions of formation and the action is time barred because it was not brought within six months of the effective date of the Validating Act.

The City's argument is meritless because the District's action for declaratory and injunctive relief is not contesting the validity of the formation of the District. *Rather, the District brought this action to resist the City's attempt to dissolve the District.* Therefore the six-month statute of limitations set forth in the Validating Act is not applicable.

As explained, the District is not challenging its own validity. Rather, it is *the City* which is now attacking the validity of the District by arguing the conditions of formation are not severable from the rest of the formation resolution and if the formation conditions are invalid so is the entire formation resolution. It is that challenge by *the City* to the validity of the formation of the District which is time barred. Under the Validating Act, the City had six months to bring an action contesting the validity of the formation of the District. Having failed to bring such an action during that period, the City cannot now challenge the District's status as a legally organized entity.

In sum, the instant action by the District for declaratory and injunctive relief against the City's dissolution effort is not time barred. Rather, it is the City's attack on the validity of the formation of the District which is untimely.

5. *Nature of the relief to which the District is entitled.*

■ Preliminarily, we note that summary judgment may be had in a declaratory relief action since " '[t]he propriety of the application of declaratory relief lies in the trial court's function to render such a judgment when only legal issues are presented for its determination.' " (*City of Torrance* v. *Castner* (1975) 46 Cal.App.3d 76, 83, fn. 3 [120 Cal.Rptr. 23]; see *Aetna*

---

[9]Similarly, Code of Civil Procedure section 349.1 imposes a six-month statute of limitations for commencing an action to contest the validity of any acts or proceedings for the formation of a public entity.

*Casualty & Surety Co.* v. *Superior Court* (1980) 114 Cal.App.3d 49, 55 [170 Cal.Rptr. 527].)

 Turning to the District's prayer for relief, it sought entry of a summary judgment declaring the District to be a valid state entity outside the control and jurisdiction of the City and enjoining the City from taking any action to interfere with the status or activities of the District. It appears the District's request is overbroad. It cannot reasonably be argued that once a GHAD is formed, thereafter there is no means to dissolve it. It thus becomes simply a question of how dissolution may be achieved. As explained, it appears Cortese-Knox provides a mechanism for dissolution of a GHAD. While the City is time barred by the Validating Act from bringing an action to contest the validity of the *formation* of the District, the City is *not* foreclosed from adopting a resolution of application pursuant to Government Code section 56800 to begin the laborious process of seeking a dissolution of the District.

In other respects, the District's request for summary judgment was proper.

## CONCLUSION

Cortese-Knox prescribes the exclusive authority and procedure for dissolution of a GHAD. (Gov. Code, §§ 56100, 56021, subd. (e).) Accordingly, the City cannot unilaterally dissolve the District by way of a council resolution, and the District is entitled to declaratory and injunctive relief to that effect.[10]

## DISPOSITION

The alternative writ having served its purpose is discharged. Let a peremptory writ of mandate issue, directing the respondent court to vacate its order denying the District's motion for summary judgment and to enter a summary judgment declaring the District to be a validly formed political subdivision of the state, and enjoining the City from taking any action to

[10]No published case has delved into the maze of the Public Resources Code, specifically, division 17 thereof pertaining to GHAD's, to address the issue of how such a district, once formed, may be dissolved. Nor is there any pertinent legislative history to guide this court. However, we believe our interpretation is reasonable. If our conclusion is not what the Legislature intended, the statutory scheme could use clarification. (See *Malibu Committee for Incorporation* v. *Board of Supervisors, supra,* 222 Cal.App.3d at p. 410; *Mir* v. *Charter Suburban Hospital* (1994) 27 Cal.App.4th 1471, 1487, fn. 7 [33 Cal.Rptr.2d 243].)

dissolve the District except in compliance with Cortese-Knox. (Gov. Code, §§ 56000 et seq., 56100.)

Croskey, J., and Aldrich, J., concurred.

A petition for a rehearing was denied October 26, 1995, and the petition of real party in interest for review by the Supreme Court was denied December 14, 1995.