TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 99-602 |
| of | : | October 6, 1999 |
| BILL LOCKYER Attorney General | : | |
| GREGORY L. GONOT Deputy Attorney General | : | |

THE HONORABLE RICHARD K. RAINEY, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

If a local agency formation commission conditions approval of a change of organization or reorganization upon a requirement that the subject agency levy or fix and collect a previously established and collected tax, benefit assessment, or property-related fee or charge on parcels being annexed to the agency, do the voter and landowner approval requirements set forth in the Constitution relating to taxes, assessments, fees, and charges apply?

CONCLUSION

If a local agency formation commission conditions approval of a change of organization or reorganization upon a requirement that the subject agency levy or fix and collect a previously established and collected tax, benefit assessment, or property-related fee or charge on parcels being annexed to the agency, the voter and landowner approval requirements of the Constitution relating to taxes, assessments, fees, and charges do not apply.

ANALYSIS

The Cortese-Knox Local Government Reorganization Act of 1985 (Gov. Code, §§ 56000-57550; "Act")[1] provides for the establishment of a local agency formation commission ("LAFCO") in each county (§§ 56325-56337) "to encourage orderly growth and development and the assessment of local community services needs" (*Antelope Valley-East Kern Water Agency* v. *Local Agency Formation Com.* (1988) 204 Cal.App.3d 990, 994; see *San Miguel Consolidated Fire Protection Dist.* v. *Davis* (1994) 25 Cal.App.4th 134, 151). The primary function of a LAFCO is "[t]o review and approve or disapprove with or without amendment, wholly, partially, or conditionally, proposals for changes of organization or reorganization" of local agencies. (§ 56373; see *McBail & Co.* v. *Solano County Local Agency Formation Com.* (1998) 62 Cal.App.4th 1223, 1228; *Las Tunas Beach Geologic Hazard Abatement Dist.* v. *Superior Court* (1995) 38 Cal.App.4th 1002, 1007-1008.) "Changes of organization" include city incorporations, district formations, annexations or detachments from a city or district, disincorporations of cities, dissolutions of districts, and certain mergers and consolidations. (§ 56021.) "'Reorganization' means two or more changes of organization initiated in a single proposal." (§ 56073.)

In performing its duties, a LAFCO conducts public hearings on the proposals presented to it where it receives oral and written protests, objections, and evidence. (§§ 56834-56840; see *Las Tunas Beach Geologic Hazard Abatement Dist.* v. *Superior Court*, *supra*, 38 Cal.App.4th at 1009.) As an exercise of its legislative and political power (see *San Miguel Consolidated Fire Protection Dist.* v. *Davis*, *supra*, 25 Cal.App.4th at 152), the LAFCO adopts a resolution approving or disapproving the proposal, with or without conditions (§§ 56851-56852).

The question presented for resolution concerns a LAFCO decision to condition approval of a change of organization or reorganization upon a requirement that the subject agency levy or fix and collect a previously established and collected tax, benefit assessment,

---

[1] References hereafter to the Government Code are by section number only.

or property-related fee or charge on parcels to be annexed to the agency. Do the voter and landowner approval requirements set forth in the Constitution relating to taxes, assessments, fees, and charges apply? We conclude that they do not.

The constitutional provisions in question are contained in articles XIII C and XIII D.[2] Section 2 of article XIII C provides in part with respect to the imposition of taxes:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) No local government may impose, extend, or increase any general tax unless and until that tax is submitted to the electorate and approved by a majority vote. A general tax shall not be deemed to have been increased if it is imposed at a rate not higher than the maximum rate so approved. The election required by this subdivision shall be consolidated with a regularly scheduled general election for members of the governing body of the local government, except in cases of emergency declared by a unanimous vote of the governing body.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(d) No local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote. A special tax shall not be deemed to have been increased if it is imposed at a rate not higher than the maximum rate so approved."

Article XIII D prescribes requirements for the imposition of assessments, fees, and charges:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Sec. 4. Procedures and Requirements for All Assessments. (a) An agency which proposes to levy an assessment shall identify all parcels which will have a special benefit conferred upon them and upon which an assessment will be imposed. The proportionate special benefit derived by each identified parcel shall be determined in relationship to the entirety of the capital cost of a public improvement, the maintenance and operation expenses of a public improvement, or the cost of the property-related service being provided. No assessment shall be imposed on any parcel which exceeds the reasonable cost of the proportional special benefit conferred on that parcel. Only special

_____

[2] References hereafter to the Constitution are by article number only.

benefits are assessable, and an agency shall separate the general benefits from the special benefits conferred on a parcel. . . .

"(b) All assessments shall be supported by a detailed engineer's report prepared by a registered professional engineer certified by the State of California.

"(c) The amount of the proposed assessment for each identified parcel shall be calculated and the record owner of each parcel shall be given written notice by mail of the proposed assessment, the total amount thereof chargeable to the entire district, the amount chargeable to the owner's particular parcel, the duration of the payments, the reason for the assessment and the basis upon which the amount of the proposed assessment was calculated, together with the date, time, and location of a public hearing on the proposed assessment. Each notice shall also include, in a conspicuous place thereon, a summary of the procedures applicable to the completion, return, and tabulation of the ballots required pursuant to subdivision (d), including a disclosure statement that the existence of a majority protest, as defined in subdivision (e), will result in the assessment not being imposed.

"(d) Each notice mailed to owners of identified parcels within the district pursuant to subdivision (c) shall contain a ballot which includes the agency's address for receipt of the ballot once completed by any owner receiving the notice whereby the owner may indicate his or her name, reasonable identification of the parcel, and his or her support or opposition to the proposed assessment.

"(e) The agency shall conduct a public hearing upon the proposed assessment not less than 45 days after mailing the notice of the proposed assessment to record owners of each identified parcel. At the public hearing, the agency shall consider all protests against the proposed assessment and tabulate the ballots. The agency shall not impose an assessment if there is a majority protest. A majority protest exists if, upon the conclusion of the hearing, ballots submitted in opposition to the assessment exceed the ballots submitted in favor of the assessment. In tabulating the ballots, the ballots shall be weighted according to the proportional financial obligation of the affected property.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Sec. 5. Effective Date. Pursuant to subdivision (a) of Section 10 of

Article II, the provisions of this article shall become effective the day after the election unless otherwise provided. Beginning July 1, 1997, all existing, new, or increased assessments shall comply with this article. Notwithstanding the foregoing, the following assessments existing on the effective date of this article shall be exempt from the procedures and approval process set forth in Section 4:

"(a) Any assessment imposed exclusively to finance the capital costs or maintenance and operation expenses for sidewalks, streets, sewers, water, flood control, drainage systems or vector control. Subsequent increases in such assessments shall be subject to the procedures and approval process set forth in Section 4.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(d) Any assessment which previously received majority voter approval from the voters voting in an election on the issue of the assessment. Subsequent increases in those assessments shall be subject to the procedures and approval process set forth in Section 4.

"Sec. 6. Property-Related Fees and Charges. (a) Procedures for New or Increased Fees and Charges. An agency shall follow the procedures pursuant to this section in imposing or increasing any fee or charge as defined pursuant to this article, including, but not limited to, the following:

"(1) The parcels upon which a fee or charge is proposed for imposition shall be identified. The amount of the fee or charge proposed to be imposed upon each parcel shall be calculated. The agency shall provide written notice by mail of the proposed fee or charge to the record owner of each identified parcel upon which the fee or charge is proposed for imposition, the amount of the fee or charge proposed to be imposed upon each, the basis upon which the amount of the proposed fee or charge was calculated, the reason for the fee or charge, together with the date, time, and location of a public hearing on the proposed fee or charge.

"(2) The agency shall conduct a public hearing upon the proposed fee or charge not less than 45 days after mailing the notice of the proposed fee or charge to the record owners of each identified parcel upon which the fee or charge is proposed for imposition. At the public hearing, the agency shall consider all protests against the proposed fee or charge. If written protests against the proposed fee or charge are presented by a majority of owners of the

identified parcels, the agency shall not impose the fee or charge.

"...............................................................

"(c) Voter Approval for New or Increased Fees and Charges. Except for fees or charges for sewer, water, and refuse collection services, no property-related fee or charge shall be imposed or increased unless and until that fee or charge is submitted and approved by a majority vote of the property owners of the property subject to the fee or charge or, at the option of the agency, by a two-thirds vote of the electorate residing in the affected area. The election shall be conducted not less than 45 days after the public hearing. An agency may adopt procedures similar to those for increases in assessments in the conduct of elections under this subdivision.

"..............................................................."

In determining whether these voter and landowner approval requirements apply to proceedings conducted by a LAFCO under the Act, we note first that the Act's general rule with respect to taxes, assessments, fees, and charges is found in section 57330, which provides:

"Any territory annexed to a city or district shall be subject to the levying or fixing and collection of any previously authorized taxes, benefit assessments, fees or charges of the city or district."

This general rule may be modified by the imposition of conditions upon approval of a proposal for a change of organization or reorganization. Permissible conditions are set forth in section 56844:

"Any change of organization or reorganization may provide for, or be made subject to one or more of, the following terms and conditions. However, none of the following terms and conditions shall directly regulate land use, property development, or subdivision requirements:

"...............................................................

"b) The levying or fixing and the collection of any of the following, for the purpose of providing for any payment required pursuant to subdivision (a):

"(1) Special, extraordinary, or additional taxes or assessments.

"(2) Special, extraordinary, or additional service charges, rentals, or rates.

"(3) Both taxes or assessments and service charges, rentals, or rates.

"(c) The imposition, exemption, transfer, division, or apportionment, as among any affected cities, affected counties, affected districts, and affected territory of liability for payment of all or any part of principal, interest, and any other amounts which shall become due on account of all or any part of any outstanding or then authorized but thereafter issued bonds, including revenue bonds, or other contracts or obligations of any city, county, district, or any improvement district within a local agency, and the levying or fixing and the collection of any (1) taxes or assessments, or (2) service charges, rentals, or rates, or (3) both taxes or assessments and service charges, rentals, or rates, in the same manner as provided in the original authorization of the bonds and in the amount necessary to provide for that payment.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(s) The levying of assessments, including the imposition of a fee pursuant to Section 50029 or 66484.3 or the approval by the voters of general or special taxes. For the purposes of this section, imposition of a fee as a condition of the issuance of a building permit does not constitute direct regulation of land use, property development, or subdivision requirements.

"(t) The extension or continuation of any previously authorized charge, fee, assessment, or tax by the local agency or a successor local agency in the affected territory.

"(u) The transfer of authority and responsibility among any affected cities, affected counties, and affected districts for the administration of special tax and special assessment districts, including, but not limited to, the levying and collecting of special taxes and special assessments, including the determination of the annual special tax rate within authorized limits; the management of redemption, reserve, special reserve, and construction funds; the issuance of bonds which are authorized but not yet issued at the time of the transfer, including not yet issued portions or phases of bonds which are authorized; supervision of construction paid for with bond or special tax or assessment proceeds; administration of agreements to acquire public facilities and reimburse advances made to the district; and all other rights and responsibilities with respect to the levies, bonds, funds, and use of proceeds that would have

applied to the local agency that created the special tax or special assessment district.

""[3]

Section 56844 thus authorizes a LAFCO to impose conditions that would require the subject agency to levy or fix and collect a previously established and collected tax, benefit assessment, or property-related fee or charge on the parcels to be annexed. Even in the absence of such a condition, annexed parcels not previously subject to the particular taxes, benefit assessments, fees, or charges would become subject to them by virtue of the general provisions of section 57330.

The Act contains its own approval process that may require a vote of the landowners or the electorate in the affected area. A proposal may be (1) disapproved by LAFCO, (2) approved without an election if the requisite number of registered voters or landowners do not object, or (3) subject to an election if the requisite number of protests are presented. (§§ 50775-50780, 57100-57103; *Greenwood Addition Homeowners Assn.* v. *City of San Marino* (1993) 14 Cal.App.4th 1360, 1363-1364.) When there is an election, a simple majority is required to approve or reject the proposal. In *Board of Supervisors* v. *Local Agency Formation Com.* (1992) 3 Cal.4th 903, 912, the court observed:

> ". . . [T]he voters' role under the Cortese-Knox Act in confirming an incorporation is rather like that of the masons who place a keystone at the apex of a high and intricate arch. The voters' approval is an essential piece, but as we have shown, by the time the question reaches the electorate the incorporation proposal will already have undergone a labyrinthine process containing elaborate safeguards designed to protect the political and economic interests of affected local governments, residents, and landowners."

We believe that the provisions of the Constitution and the Act may be harmonized to promote efficient governmental operations and public control over government spending. Under the Act, the taxes, assessments, fees, and charges have previously been approved by the electorate, if so required by the Constitution, prior to the change of organization or reorganization. Those who would become subject to the established taxes, assessments, fees, and charges upon the change of organization or reorganization have the opportunity to reject the imposition of the previously approved taxes, assessments, fees, and charges by rejecting the annexation proposal. (§§ 57075-57078.) The Act's provisions thus

---

[3] Sections 50029 and 66484.3 authorize the County of Orange and cities therein to impose development fees to defray the cost of constructing bridges and major thoroughfares. (See *Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491.)

coincide with the constitutional requirements; an additional election under article XIII C or XIII D would be wasteful of taxpayer funds.[4]

In interpreting articles XIII C and XIII D, we may apply well recognized principles of constitutional interpretation. In *Howard Jarvis Taxpayers Assn.* v. *City of San Diego* (1999) 72 Cal.App.4th 230, 235-236, the court recently observed in interpreting Proposition 218:

> "In construing a constitutional provision adopted by the voters, our primary task is to determine the voters' intent. (*People* v. *Jones* (1993) 5 Cal.4th 1142, 1146.) In determining intent, we look first at the words of the proposition. (*Ibid.*) When the language is clear and unambiguous, there is no need for construction nor is it necessary to resort to an ""'indicia of the intent . . . [by] the voters . . . .' [Citation.]"' (*Ibid.*; *Arnett* v. *Dal Cielo* (1996) 14 Cal.4th 4, 24.) "'Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language." [Citation.] Of course, in construing the statute, "[t]he words . . . must be read in context, considering the nature and purpose of the statutory enactment."' (*People* ex rel. *Lungren* v. *Superior Court* (1996) 14 Cal.4th 294, 301.)"

In *Amador Valley Joint Union High School Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 244-245, the court stated:

> ". . . California courts have held that constitutional and other enact-ments must receive a liberal, practical common-sense construction which will meet changed conditions and the growing needs of the people. [Citations.] A constitutional amendment should be construed in accordance with the natural and ordinary meaning of its words. . . .

> ". . . [W]hen, as here, the enactment follows voter approval, the ballot summary and arguments and analysis presented to the electorate in connection with a particular measure may be helpful in determining the probable meaning of uncertain language. [Citations.]"

We have examined in detail the voters' pamphlet with respect to Proposition 218, the initiative

---

[4] For purposes of this opinion, we may assume that the LAFCO would not require a change in the methodology of determining the amounts to be collected, would not increase the rates, and would not lengthen the period of collection.

measure approved by the voters in 1996 that added articles XIII C and XIII D. (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 5, 1996) pp. 72-77.) Nothing therein suggests that the proposed voter approval requirements were to be added to the voter approval requirements of the Act. The ballot materials regarding Proposition 218 simply do not support an intent by the electorate to subject LAFCO proceedings to the requirements of articles XIII C and XIII D.

Moreover, the Legislature has enacted implementing legislation, defining the circumstances under which Proposition 218 is to be applied. (§§ 53750-53753.5; see 82 Ops.Cal.Atty.Gen. 1, 3 (1999); 81 Ops.Cal.Atty.Gen. 104, 109-110 (1998).) Our reading of the language of articles XIII C and XIII D is consistent with the Legislature's implementing provisions. (See § 53750, subd. (e).)

Finally, as a practical matter, it would be virtually impossible to comply with the varying and complex requirements of articles XIII C and XIII D with respect to changes of organization or reorganization under the Act. Not only the timing of the elections but the differing constituencies who would be voting on different measures with differing voter approval requirements (see art. XIII C, § 2, subd. (b); art. XIII D, § 4, subd. (e), § 6, subd. (c)) would present an administrative imbroglio.

In summary, then, a change of organization or reorganization involves taxes, assessments, fees, and charges that have previously been established and approved by the electorate where constitutionally or statutorily required. The rates and duration remain the same, as does the methodology in arriving at the amount of revenue to be collected. The Act provides a protest and election process for approving the proposed changes. (§§ 57075-57078.) In effect, the Act complements articles XIII C and XIII D rather than conflicts with them. (See *Patton* v. *City of Alameda* (1985) 40 Cal.3d 41, 45; *Metropolitan Water District* v. *Dorff* (1979) 98 Cal.App.3d 109, 113-115.)

We conclude that if a LAFCO conditions approval of a change of organization or reorganization upon a requirement that the subject agency levy or fix and collect a previously established and collected tax, benefit assessment, or property-related fee or charge on parcels being annexed to the agency, the voter and landowner approval requirements set forth in articles XIII C and XIII D relating to taxes, assessments, fees, and charges do not apply.

\* \* \* \* \*